# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3998

_____

Doyas Ingram; Mark Barbaree,        *
                                                     *

        Plaintiffs - Appellants,        *
                                                     *

        v.                             *   Appeal from the United States
                                               *   District Court for the

Dave Johnson, individually and in his   *   Eastern District of Arkansas.
official capacity; Donald Webb,       *
individually and in his official capacity,  *
                                                 *

        Defendants - Appellees.      *

_____

Submitted:  May 13, 1999

Filed:  August 20, 1999

_____

Before LOKEN, HANSEN, and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Doyas Ingram and Mark Barbaree appeal the district court's[1] grant of summary judgment dismissing their 42 U.S.C. § 1983 damage claims against two supervisors in the Arkansas Department of Community Punishment ("DCP").  Parole Administrator Dave Johnson suspended Ingram and Barbaree for their conduct while transporting a

_____

[1]The HONORABLE JAMES M. MOODY, United States District Judge for the Eastern District of Arkansas.

parolee.  Area Parole Supervisor Donald Webb fired Barbaree some months later following an unrelated incident.  Ingram and Barbaree argue these disciplinary actions were unlawful retaliation for their exercise of First Amendment rights.  Having carefully reviewed the grant of summary judgment *de novo*, we affirm.  See Buazard v. Meridith, 172 F.3d 546, 548 (8th Cir. 1999) (standard of review).

## I.  The Suspension of Ingram and Barbaree.

On September 25, 1997, Parole Officers Ingram and Barbaree were assigned to transport parolee Richard Conley from the Prairie County Jail to the Pulaski County Jail, a trip that should take no more than three hours.  According to the deposition testimony of Ingram and Barbaree, during the trip Conley told them of possible criminal activity by other parole officers (apparently, taking bribes or gratuities from parolees).  Ingram and Barbaree took Conley to his girlfriend's house, where Conley gave her money.  While there, at Conley's request Ingram called a local FBI agent and arranged an interview.  Ingram and Barbaree then took Conley to the FBI offices where he was interviewed by the agent for thirty to sixty minutes.  Ingram and Barbaree were present but did not help conduct the interview.  After the FBI interview, Ingram and Barbaree took Conley to his father's house.  On the way, the trio stopped at a fast food restaurant and ate a meal in the DCP van.  Finally, some six hours after the trip began, Ingram and Barbaree delivered Conley to his proper destination, the Pulaski County Jail.  No DCP supervisor knew of the four unauthorized stops until parolee Conley described the incident to another parole officer in early October.  That officer notified Administrator Johnson, who investigated and suspended Ingram for ten days and Barbaree for three days for violating DCP policies.

In their complaint, Barbaree and Ingram allege that Johnson "retaliated against [them] for [their] part in reporting suspected criminal activity" to the FBI.  To establish a § 1983 claim of unlawful First Amendment retaliation, a public employee must prove that he spoke out on a matter of public concern and that his protected speech was a

substantial factor in the adverse employment action.  See  Connick v. Myers, 461 U.S. 138, 142 (1983); Pickering v. Board of Educ., 391 U.S. 563, 568 (1968); Bausworth v. Hazelwood Sch. Dist., 986 F.2d 1197, 1198 (8th Cir.  1993).  The reporting of possible corruption within a government office or agency is speech on a matter of public concern.  See Barnard v. Jackson County, Mo., 43 F.3d 1218, 1225 (8th Cir.), cert. denied, 516 U.S. 808 (1995).

On appeal, Ingram and Barbaree argue the case as though they had timely delivered Conley to the Pulaski County Jail, subsequently reported Conley's allegations of parole officer misconduct to the FBI, and then were disciplined for speaking out on this subject outside of the DCP.  But Conley is the one who reported "suspected criminal activity" to the FBI.  Ingram and Barbaree seek First Amendment protection for themselves because of the role they played in facilitating Conley's speech to the FBI agent on this matter of public concern.  But Ingram and Barbaree steadfastly deny playing a speaking role, testifying that they did not solicit Conley's story, they only called the FBI agent at Conley's request, and they did not help the agent interview Conley.  Thus, the only "part" they played in the incident was taking Conley to the FBI office when they should have been delivering him to the Pulaski County Jail.  That *conduct*, and the three other unauthorized stops that were unrelated to their First Amendment claim, were serious violations of DCP policy and procedures.  Their conduct clearly warranted the relatively modest suspensions Johnson imposed.

Even broadly viewing the FBI portion of the Conley incident, the only speech by Ingram and Barbaree was Ingram's phone call to the FBI agent, at Conley's request, to arrange the interview.  That speech was clearly incidental to their unauthorized conduct. "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." United States v. O'Brien, 391 U.S. 367, 376 (1968); see Marciariello v. Sumner, 973 F.2d 295, 298-99 (4th Cir. 1992), cert. denied, 506 U.S. 1080 (1993).

-3-

Because Ingram and Barbaree failed to allege, or present evidence, that they engaged in speech on a matter of public concern while transporting Conley to the Pulaski County Jail, the district court properly granted summary judgment dismissing their claim that the resulting suspensions violated their First Amendment rights. Thus, we need not consider whether "the interest of the State, as employer, in promoting the efficiency of the public services it performs through its employees" outweighs Barbaree and Ingram's interests as public employees in commenting on such matters. Pickering, 391 U.S. at 568; see Porter v. Dawson Educ. Serv. Coop., 150 F.3d 887, 892 (8th Cir. 1998); Tindle v. Caudell, 56 F.3d 966, 971-72 (8th Cir. 1995). Nor need we consider the district court's alternative ruling that Parole Administrator Johnson is entitled to qualified immunity from these damage claims. See generally Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982); Bartlett v. Fisher, 972 F.2d 911, 916 (8th Cir. 1992).

## II. The Termination of Barbaree.

Ingram and Barbaree commenced this lawsuit against Johnson on December 4, 1997, some six weeks after their suspensions. At that time, Barbaree was a probationary employee, and his probationary period was extended an additional six months as a result of the suspension. Seven months later, a parolee grabbed an unsecured butcher knife from Barbaree's desk and attempted suicide during a drug test. The parolee was subdued and the knife recovered without injury. Five days later, Area Supervisor Webb terminated Barbaree, explaining in a letter to Barbaree that his negligent failure to secure the butcher knife "put you, co-workers and clients at unnecessary risk to injury and could have resulted in loss of life." Barbaree then filed an amended complaint naming Webb as a defendant and alleging that Webb violated Barbaree's First Amendment rights by firing him in retaliation for filing the lawsuit against Johnson. The district court granted summary judgment for Webb, concluding Barbaree did not come forward with sufficient evidence that filing the lawsuit was a substantial or motivating factor in his termination. We agree.

-4-

There is no evidence connecting the incident with parolee Conley that led to Barbaree's three-day suspension, and the incident in which he negligently allowed a suicidal parolee access to a butcher knife. In addition, the seven-month gap between the filing of the lawsuit and the termination by Webb "weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint." Smith v. St. Louis Univ., 109 F.3d 1261, 1266 (8th Cir. 1997). Barbaree relies on a conversation with Webb in which, according to Barbaree, Webb said the termination was "based on my performance with the weapon, with previous things such as my DWI, my probationary status, and . . . the FBI thing . . . the deal with Mr. Johnson." But Supervisor Webb was not initially a defendant in the lawsuit against Johnson, so evidence that Webb was aware of "the FBI thing . . .with Mr. Johnson" does not raise much of an inference that Webb was even aware of the lawsuit. Webb's statement that Barbaree's failure to secure the knife was not the only performance deficiency considered does not satisfy Barbaree's burden to show that the stated reason for termination was a pretext for First Amendment retaliation discrimination. See Dhyne v. Meiners Thriftway, Inc., No. 98-2537, 1999 WL 512169, at * 9-10 (8th Cir. July 21, 1999). In that same conversation, Barbaree told Webb he felt bad about the knife incident but did not think it warranted termination. Webb disagreed. As we have stated on prior occasions, we do not sit as a super-personnel department to resolve such disagreements. See Singleton v. Cecil, 176 F.3d 419, 428 (8th Cir. 1999) (en banc).

The judgment of the district court is affirmed.

A true copy.

Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.