# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1874

_____

| | | |
|---|---|---|
| Kimberly Ann Shrum, as Next Friend of Justin Patrick Kelly, a minor, | * | |
| | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Michael Kluck, | * | |
| | * | |
| Defendant. | * | |
| | * | Appeal from the United States |
| David Wade, Individually and as | * | District Court for the |
| Superintendent of the Elwood, | * | District of Nebraska |
| Nebraska, Public School District; | * | |
| The Elwood, Nebraska, Public | * | |
| School District, | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted: December 14, 2000

Filed: May 8, 2001

_____

Before McMILLIAN and MURPHY, Circuit Judges, and BOGUE,[1] District Judge.

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

McMILLIAN, Circuit Judge.

Appellant Kimberly Ann Shrum, on behalf of her minor son Justin Patrick Kelly, appeals from a grant of summary judgment entered in District Court[2] for the District of Nebraska in favor of defendants, holding that the Elwood, Nebraska, Public School District ("Elwood") and its superintendent were not liable under either 42 U.S.C. § 1983 or Title IX (20 U.S.C. § 1681(a)) for damages resulting from her son's sexual molestation by a former Elwood school teacher employed by another school district after leaving his employment with Elwood. Shrum, ex rel. Kelly v. Kluck, No. 4:97CV3366 (D. Neb. Feb. 23, 2000 ) (memorandum and order). The district court found that Elwood's confidential settlement agreement with the teacher did not "shock the conscience" in violation of § 1983, nor did it constitute deliberate indifference in violation of Title IX. For reversal, Shrum claims that the district court erred in granting summary judgment in favor of Elwood on both the § 1983 claim and the Title IX claim. For the reasons discussed below, we affirm the judgment of the district court.

## Jurisdiction

Jurisdiction was proper in the district court based upon 28 U.S.C. §§ 1331, 1332, and 1343. Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

Elwood employed Michael Kluck as a teacher and coach in 1992. Kluck taught 9th, 11th, and 12th grade English, 7th and 8th grade study skills, and sponsored a journalism group. In November 1992, the Gosper County Sheriff's Department

---

[2]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

investigated a sexual assault complaint that Kluck had allegedly touched his female students inappropriately while at school. The school administration was aware of this investigation. Based upon student interviews, the deputy determined that Kluck had made inappropriate remarks to students but found no evidence of physical contact.

In October 1993, Richard Einspahr, the school principal, tape-recorded complaints about Kluck from 16 students. Based on these statements, Einspahr sent Kluck a written reprimand on October 27, 1993, which detailed the complaints about Kluck's inappropriate comments and touching. The letter also expressed concern about Kluck's having spent time alone with several junior high boys. The reprimand warned Kluck that Einspahr would continue to investigate the charges and allegations against him, and was prepared to take further action. Kluck issued a written reply that attempted to explain some of the allegations.

In December 1993 and March 1994, Kluck received poor evaluations of his work. On March 11, 1994, after consulting with Elwood's attorney, Einspahr sent Kluck a letter informing Kluck that he intended to recommend that the Elwood Board of Education not renew Kluck's contract for the following year. In a subsequent meeting, Kluck asserted that the letter violated his due process rights because he was not given adequate notice to request a termination hearing before the school board. On March 16, 1994, Superintendent David Wade sent Kluck a second letter that included all of the information required to satisfy Kluck's due process concerns, and Kluck requested a termination hearing before the Elwood Board of Education. After discovering that the school district's legal fees for the hearing would cost between $3,000 and $4,000, Elwood entered into a confidential settlement agreement with Kluck.[3]

---

[3]According to Elwood, the settlement agreement was prompted by the possibility of litigation arising from Kluck's claim that his due process rights had been violated.

The settlement stipulated that: (1) Kluck could voluntarily resign, (2) Wade would write him a positive letter of recommendation, (3) all future references to Kluck would be consistent with the letter of recommendation, (4) Kluck's resignation would be categorized as "with good cause" for purposes of unemployment compensation, (5) Kluck would be allowed to remove any documentation from his employment file other than what the school district relied upon when hiring him, and (6) the terms of the settlement would remain "confidential to the extent allowed by law." Wade distributed a memorandum to each school board member describing these conditions and recommending that they agree to them. After the school board agreed, Wade signed the settlement agreement on March 24, 1994.[4]

After leaving Elwood, Nebraska, Kluck applied for a teaching position for the following 1994-1995 school year in La Porte, Texas, where he submitted the letter of recommendation from Elwood. The letter stated in full:

> Mr. Kluck has assisted Elwood Public Schools in a variety of activities and has been willing to help out in emergency situations. He has a good knowledge of his subject area and his coaching area. He has participated in numerous clinics.
> Mr. Kluck used a variety of teaching aids and made use of library resources. Outwardly he showed an interest in his students and the varied activities of the school. He arrived at school on time and was aware of and followed school channels and procedures; phone calls, bills, and invoices were handled properly.
> Mr. Kluck was responsible for Senior, Junior, and Freshman English, Junior High Study Skills, Journalism and year book sponsor. In addition he was head boys basketball and golf coach.

---

[4]In 1992, another teacher had entered a similar confidential settlement arrangement as part of his or her separation from employment at Elwood.

During the interview process, the La Porte school superintendent called Wade twice to ask about Kluck's teaching record at Elwood, but never actually spoke with Wade. The La Porte school district hired Kluck as a coach and teacher at La Porte Junior High for the 1994-1995 school year. The La Porte school district claims that it would not have hired Kluck if it had known about his prior misconduct in Elwood.

In November 1994, Kluck sexually molested Shrum's son, Kelly, one of Kluck's thirteen-year-old junior high students in La Porte, Texas. On September 14, 1995, Kluck pled guilty in Texas to the crime of Indecency with a Child. Shrum, on behalf of her son, filed suit against Elwood and Wade in federal district court, alleging § 1983 and pendent state law claims. Elwood moved for summary judgment, which the district court denied due to outstanding disputes of material fact on the § 1983 claim. Shrum amended her complaint to add a Title IX claim, arguing that Elwood's control over Kluck's future teaching opportunities made it liable for Kluck's subsequent molestation of her son. Elwood again moved for summary judgment. On its own motion, the district court asked for briefs on whether to apply the "shocks the conscience" standard to the § 1983 claim. Shrum, ex rel. Kelly v. Kluck, No. 4:97CV3366 (D.Neb. Jan. 18, 2000) (citing County of Sacramento v. Lewis, 523 U.S. 833 (1998) (Lewis)) (memorandum and order). After additional briefing, the district court applied the "shocks the conscience" standard to the § 1983 claim, renewed consideration of and granted Elwood's first motion for summary judgment on the § 1983 claim, and also granted Elwood's second motion for summary judgment on the Title IX claim. This appeal followed.

**Discussion**

I. Standard of Review

We review the district court's grant of summary judgment *de novo* to determine whether there is a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Ingram v. Johnson, 187 F.3d 877, 878 (8th Cir. 1999). Like the district court, we view the record in the

light most favorable to the nonmoving party. Id. However, the nonmoving party must substantiate its allegations with evidence that is sufficiently probative to avoid summary judgment as a matter of law. Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to" her case, then all other facts will be considered immaterial and the moving party will be entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

II.  § 1983 Claim

Shrum contends that the district court erred in dismissing her § 1983 claim on summary judgment because there are genuine issues of material fact regarding whether Elwood should be held liable for damages under § 1983 as a result of: (1) Elwood's maintenance of a policy or custom which exhibited deliberate indifference to her son's constitutional right to bodily integrity, and which proximately caused her son's injuries, and (2) Elwood's creation of the danger which resulted in her son's molestation and its subsequent duty to protect him from that danger. We disagree. For Shrum to defeat summary judgment, she must adequately prove the essential elements of § 1983 liability: (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right. Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403-04 (1997) (Brown). We agree with the district court that Shrum failed to demonstrate genuine issues of material fact on these elements.

In order to incur § 1983 liability, "there must first be a violation of the plaintiff's constitutional rights." Roach v. City of Fredericktown, 882 F.2d 294, 297 (8th Cir. 1989); see also Doe v. Wright, 82 F.3d 265, 268 (8th Cir. 1996) (quoting Martinez v. California, 444 U.S. 277, 284 (1980) (noting that the first inquiry in a § 1983 claim is "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' of the United States")). Shrum argues that her son was deprived of a liberty interest, his freedom of bodily integrity, under the Due Process Clause of the

-6-

Fourteenth Amendment. It is well-settled that the Due Process Clause of the Fourteenth Amendment protects the liberty interest of a child in public school from sexual abuse. See Rogers v. City of Little Rock, 152 F.3d 790, 796 (8th Cir. 1998) (citing Doe v. Taylor, 15 F.3d 443, 450-51 (5th Cir. 1994)). We agree with the district court that Shrum satisfactorily presented this essential element of § 1983 liability.

However, Shrum must also "show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Shrum asserts that Elwood, as a state actor, was responsible for her son's constitutional deprivation because Elwood enabled Kluck to continue his teaching career at another school despite his sexual misconduct with students during his employment at Elwood. A school district may be accountable for the unconstitutional acts of its employees if a constitutional deprivation results from either (1) implementation or execution of an unconstitutional policy or custom by school officials or employees, see Johnson v. Outboard Marine Corp., 172 F.3d 531, 535-36 (8th Cir. 1999), or (2) in the event of a substantive due process violation, an executive action by a school official. See Lewis, 523 U.S. 833.

As a result, Shrum may be able to satisfy this essential element of her § 1983 claim, but only if she can also show that Elwood acted "with the requisite degree of culpability" and that there was "a direct causal link between the [school district's] action and the deprivation of federal rights." Brown, 520 U.S. at 404. We require that "where a plaintiff claims that the [school district] has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the [school district] is not held liable solely for the actions of its employees." Id. at 405. The purpose of such a stringent standard is to prevent § 1983 liability from collapsing into state tort law or into respondeat superior liability, an intent not contemplated by § 1983. See City of Canton v. Harris, 489 U.S. 378, 385 (1989) ("a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or

vicarious liability will not attach under § 1983."); Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79 (1986) (Pembaur) (interpreting Congress' intent to limit § 1983 liability to situations that municipalities could control, without obligating municipalities to control the conduct of others).

A.  § 1983 Liability Resulting From a Policy or Custom

Shrum claims that there are genuine issues of material fact regarding whether Elwood (1) possessed the requisite culpability, and (2) caused the constitutional violation directly enough to incur § 1983 liability.  Shrum accuses Elwood of maintaining a policy or custom which deprived her son of his constitutional right to bodily integrity.  She defines that infringing policy or custom as Elwood's official decision to terminate Kluck and enter into a confidential settlement agreement with him, even though Kluck should have been terminated for his sexually inappropriate behavior with students.  Because Shrum's claim against Elwood depends upon her son's constitutionally-protected liberty interest in his bodily integrity – a substantive due process theory  – the district court correctly applied the culpability standard for a § 1983 substantive due process claim as mandated by Lewis.

In Lewis, 523 U.S. at 846, the Supreme Court distinguished the different criteria used to establish § 1983 liability, "depending on whether it is legislation or a specific act of a governmental officer that is at issue."  It is clear in the present case that Elwood's liability depends on one specific action undertaken by the Elwood administration, which constitutes an executive action.  When the substantive due process violation occurs as a result of abusive executive action, we recognize a remedy under § 1983 only when the behavior at issue "shocks the conscience."  Id.  The purpose of this high fault standard is to distinguish the constitutionally-based § 1983 liability from traditional tort law claims.  See id. at 848 ("we have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm"); Rogers v. City of Little Rock, 152 F.3d at 797 (observing that the "shocks the conscience" test is "the

appropriate test to apply to substantive due process claims" because it "serves to distinguish abusive executive acts amounting to constitutional violations from breaches of common law duties covered by tort law").

However, in some circumstances, official policy that is deliberately indifferent to unconstitutional conduct may satisfy the "shocks the conscience" standard required by Lewis. 523 U.S. at 850 n.10 ("[w]e have also employed deliberate indifference as a standard of culpability sufficient to identify a dereliction as reflective of municipal policy and to sustain a claim of municipal liability for . . . harm by unconstitutional conduct for which [an employee] would be individually liable") (citing City of Canton v. Harris, 489 U.S. at 388-89). We therefore must consider whether Elwood's official decision to enter into the confidential settlement agreement with Kluck is a policy that is so deliberately indifferent to a predictable constitutional violation that it shocks the conscience.

We have defined policy as "an official policy, a deliberate choice or a guiding principle or procedure made by an official with authority," and custom as a "persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization." Johnson v. Outboard Marine Corp., 172 F.3d at 536; See Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (Mettler). While "a single incident normally does not suffice to prove the existence of a [school district's] custom," Mettler, 165 F.3d at 1205, "[a school district's] liability may be imposed for a single decision by [school] policymakers under appropriate circumstances," Pembaur, 475 U.S. at 480, because "even a single decision by such a body unquestionably constitutes an act of official government policy." Id.

If Elwood instituted a policy or custom which deprived Kelly of his constitutional right, then Shrum must illustrate that "the [school district's] action was taken with "deliberate indifference as to its known or obvious consequences." Brown,

489 U.S. at 388. In addition, Shrum must show a direct causal link, indicating that the policy or custom is "the moving force [behind] the constitutional violation," Mettler, 165 F.3d at 1204 (citing Monell v.Dep't of Social Servs., 436 U.S. 658, 694 (1978)). Because we apply a stringent standard of fault, Elwood's action must have been highly likely to inflict the particular injury suffered by Kelly. Brown, 489 U.S. at 410. The culpability standard and the causation standard are intertwined, because "[t]he high degree of predictability may also support an inference of causation – that the [school district's] indifference led directly to the very consequence that was so predictable." Id.

In the present case, Elwood's actions – entering into a confidential settlement agreement with Kluck rather than terminating him outright, and providing him with a neutral letter of recommendation – do not rise to the level of deliberate indifference. First, it is undisputed that Elwood did not have any actual knowledge of the extent of Kluck's misconduct; it was aware of rumors, investigations, and student statements, but did not possess any conclusive proof that Kluck actually molested students while employed at Elwood. Furthermore, we do not find any genuine issue of material fact regarding whether, at the time of the settlement agreement, Elwood knew that another school district would subsequently hire Kluck or that he would molest a student there. We agree with the district court that Kluck's subsequent sexual misconduct was not so obvious a consequence as to impute § 1983 liability to Elwood for its deliberate indifference to that consequence.

We also disagree with Shrum that the "generally positive letter of recommendation" demonstrates recklessness. On the contrary, we agree with the district court that the letter of recommendation does not raise an issue of material fact because it was neutral in tone, and a reasonable person reading that letter might "read between the lines" and realize that it did not unreservedly endorse Kluck as a teacher. In any event, as a matter of law, the letter of recommendation is not enough to provide the necessary causal link between Elwood's action and Kelly's molestation. See Doe

-10-

v. Wright, 82 F.3d at 269 (letter of recommendation too attenuated to state an actionable § 1983 claim).  Likewise, the causal link between Elwood's alleged cover-up of Kluck's misconduct and his subsequent child molestation is too indirect to justify § 1983 liability.  Accord Doe v. Methaction, 914 F. Supp. 101 (E.D. Pa. 1996) (holding that a school district's participation in a cover-up of a teacher's inappropriate relationship with a female student, which allowed the teacher to obtain employment at a neighboring school, was too remote to incur § 1983 liability).

We therefore agree with the district court that Shrum failed to prove the essential elements of her § 1983 claim because Elwood's behavior did not meet the significantly high culpability threshold of "shocking the conscience" and did not sufficiently cause the constitutional violation.  At most, Elwood failed to warn potential future employers of Kluck's alleged, but unconfirmed, propensity to behave inappropriately with children. We cannot say that Elwood's failure to warn other school districts either shocked the conscience or so directly caused the ultimate constitutional violation to warrant § 1983 liability.

B.  § 1983 Liability Resulting From a State-Created Danger

Because Shrum failed to establish any genuine issues of material fact to indicate that Elwood was either culpable for or the cause of her son's constitutional violation, there is no other legitimate basis for her allegation that Kluck acted under color of state law for purposes of Elwood's § 1983 liability.  Kluck cannot be characterized as a state actor because he was not employed by Elwood at the time, and "[t]he Due Process Clause contains no language which requires the state to protect its citizens against the deeds of private actors."  Doe v. Wright, 82 F.3d at 269 (holding that the district court properly dismissed a § 1983 claim against a county sheriff's office for the private acts of one of its former police officers) (citing DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 195 (1989) (DeShaney)).  As a matter of law, Elwood cannot be held responsible for failing to warn other potential employers of Kluck's

suspected misconduct because the Due Process Clause does not obligate the state to protect an individual against private violence. DeShaney, 489 U.S. at 197.

This court has recognized two exceptions to the state's exemption from protecting its citizens from the deeds of private actors: (1) in custodial settings, where the state itself has limited the individuals' ability to care for themselves, and (2) when the state is responsible for placing an individual in a position of danger which otherwise would not exist. Doe v. Wright, 82 F.3d at 268 (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). Shrum argues that there is an outstanding issue of material fact regarding whether Elwood created the danger which led to Kelly's molestation. However, school districts are not susceptible to this state-created danger theory of § 1983 liability, because there is no constitutional duty of care for school districts, as "state-mandated school attendance does not entail so restrictive a custodial relationship as to impose a duty upon the state." Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 732 (8th Cir. 1993). Consequently, public schools do not have a duty to protect schoolchildren from private violence. See Vernonia Sch. Dist. v. Acton, 515 U.S. 646, 655 (1995) ("we do not, of course, suggest that public schools as a general matter have such a degree of control over children as to give rise to a constitutional 'duty to protect'"). Therefore, Elwood's failure to warn other school districts of Kluck's misconduct is immaterial.

Because Elwood's actions do not "shock the conscience" and the state-created danger exception does not apply, we conclude that Elwood was entitled to judgment as a matter of law and we affirm the district court's order granting summary judgment in favor of Elwood on Shrum's § 1983 claim.

III. Title IX Claim

Shrum argues that the district court erred in granting summary judgment on the basis that, because Elwood did not exercise substantial control over Kluck or the student at the time of the molestation, her claim against Elwood was not actionable

under Title IX. Shrum contends that the district court construed the language of Title IX too narrowly by limiting the scope of Elwood's "control" to either control over the physical grounds of the school district or control over an abuser who is employed by the school district at the time of the abuse. Instead, Shrum characterizes Elwood's "control" as its ability to control information about Kluck and to provide him with the opportunity to molest a child. We disagree.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). However, a recipient of federal funds may only be liable for damages arising from its own misconduct. Davis v. Monroe County Board of Educ., 526 U.S. 629, 641 (1999) (Davis). The scope of Title IX liability is purposely limited in order to eliminate any "risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions." Gebser v. Lago Vista Independent School Dist., 524 U.S. 274, 290-91 (1998) (Gebser).

For a school district to incur liability under Title IX, it must be (1) deliberately indifferent (2) to known acts of discrimination (3) which occur under its control. See id.; Davis, 526 U.S. at 642. The underlying philosophy is that "[a] recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action." Davis, 526 U.S. at 644. While sexual harassment or sexual abuse clearly constitutes discrimination under Title IX, Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 75 (1992), a school district will only be liable for situations in which it "exercises substantial control over both the harasser and the context in which the known harassment occurs." Davis, 526 U.S. at 646. Specifically, the school district's deliberate indifference must either directly cause the abuse to occur or make students vulnerable to such abuse, and that abuse "must take place in a context subject to the school district's control." Id. at 645.

-13-

Shrum argues that there are genuine issues of material fact regarding Elwood's "control" over Kluck's subsequent misconduct because Elwood had actual knowledge of Kluck's sexual misconduct at Elwood, and acted with deliberate indifference by aiding Kluck in obtaining another job. Shrum contends that Elwood, as the only entity who was able to control Kluck's opportunities to molest other children by controlling the information available to other school districts, possessed enough control over the abuser and the environment of the abuse to incur Title IX liability. We agree with the district court that there was no genuine issue of material fact indicating that Elwood exercised "substantial control" over either Kluck or Kelly at the time of the sexual abuse. Therefore, as a matter of law, Elwood could not be liable for discrimination under Title IX.

The record reflects that (1) Elwood did not have actual knowledge of Kluck's sexual misconduct because the police and the school investigations were inconclusive, (2) Elwood did not directly cause the abuse to occur, nor did it directly make its students or Kelly vulnerable to the abuse, and (3) Elwood did not control the environment where the harassment occurred. As a result, at the time of Kelly's molestation, Elwood had no control over Kluck's actions or the school environment in which he acted. Elwood's previous actions, including any alleged cover-up of Kluck's sexual misconduct, are insufficient to create a direct link between the abuse and Elwood's scope of control.

We therefore agree with the district court that there are no outstanding issues of fact, as Elwood did not possess sufficient control over Kluck, Kelly, and the place of the abuse to incur Title IX liability. As a result, we affirm the district court's decision that Elwood was entitled to summary judgment as a matter of law.

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.