283 F.3d 1070
 Terence B. ALLEN, M.D., Plaintiff-Appellee,
v.
George IRANON, former Director of the Department of Public Safety, State of Hawaii; Eric Penarosa, former Director for Corrections, Department of Public Safety, State of Hawaii; Guy Hall, former Warden for the Halawa D.C. No. Correctional Facility and Administrator of Inspection, Evaluation and Compliance, Department of Public Safety, State of Hawaii, Defendants-Appellants,
and
Department Of Public Safety, State of Hawaii, Defendant.
 No. 99-16896.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 14, 2001.
 Filed March 13, 2002.
 
 Gary Hynds, Deputy Attorney General, Honolulu, HI, for the defendants-appellants.
 Michael K. Livingston, Davis, Levin, Livingston, Grande, Honolulu, HI, for the plaintiff-appellee.
 Appeal from the United States District Court for the District of Hawaii, Alan C. Kay, District Judge, Presiding. D.C. No. CV-97-00175-ACK.
 Before: B. FLETCHER, CANBY and PAEZ, Circuit Judges.
 OPINION
 CANBY, Circuit Judge.
 
 
 1
 Plaintiff Terence Allen, M.D., a physician formerly employed by the Hawaii Department of Public Safety, brought this action under 42 U.S.C. § 1983 against three state officials who were supervisors within the Department. Allen alleged that the defendants retaliated against him and conspired to retaliate against him in violation of his First Amendment rights because he spoke out on abuse of inmates at the Hawaii correctional facilities where he was employed. Following a bench trial, the district court entered judgment for Allen on all counts of the complaint. The defendants appeal. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 2
 I. Background.
 
 
 3
 Allen was employed from 1987 through 1997 by the Hawaii Department of Corrections, a subdivision of the Department of Public Safety, to provide medical services to inmates at the high and medium security units at the Halawa Correctional Facility ("Halawa"). He began working at the Department of Corrections on a fee-for-service basis and was hired in January 1995 to fill the part-time permanent position of Physician I at Halawa.
 
 
 4
 Defendant Guy Hall was Warden of Halawa from November 1993 to November 1995, and then moved to another position in the Department of Public Safety. Defendant George Iranon was Acting Director and then Director of the Department of Public Safety from July 1994 to December 1996. Defendant Eric Penarosa was Deputy Director for Corrections from the early 1990s. He became Acting Warden and then Warden of Halawa in November 1995.
 
 
 5
 Between 1987 and 1994, Allen publicly disclosed on several occasions the mistreatment of inmates by corrections officers at Halawa. At a legislative committee hearing in 1990, he provided testimony critical of the prison administration. He also had disagreements on occasion with security personnel, generally about medical issues, such as the need for privacy during inmate exams and the need to examine inmates without their being shackled. During one incident in 1990, he tore papers off a bulletin board and set off a fire alarm in anger at being kept too long in a holding unit. Despite such incidents over this seven-year period, Allen was never referred to the Department's Internal Affairs unit, which investigates complaints of employee misconduct, including breaches of security and violations of the Department's Standards of Conduct. Allen also was never "locked out" of (denied access to) the facility during this period. Instead, the district court found, these problems with Allen were "handled administratively."[1]
 
 
 6
 This pattern began to change after Hall became Warden and Allen continued to voice his concerns about the abuse of inmates at Halawa. Allen sent a memo about abuse to Hall in December 1993. Allen then spoke on this topic to Deputy Attorney General Thomas Farrell in March 1994, to the news media in August 1995, and to the Hawaii State Legislature in October 1995. Subsequently, he was subjected to two "lockouts"[2] from the Halawa facility and to multiple Internal Affairs investigations, and he was passed over for a full-time permanent Physician II position at Halawa in 1997 in favor of a candidate ranked lower after interviews and testing.
 
 
 7
 Allen brought the present action under 42 U.S.C. § 1983, alleging that the defendants had retaliated against him for exercising his First Amendment right to free speech. After a bench trial, the district court found that the defendants had retaliated against and conspired to retaliate against Allen in violation of his First Amendment rights, engaging in a campaign of harassment and constructively discharging Allen. The district court found that the lockouts were for incidents that should have been handled administratively, that a number of the Internal Affairs investigations were not appropriate matters for Internal Affairs and should have been handled administratively, and that Allen was passed over for the Physician II position without a legitimate reason, despite being qualified and having been recommended by the selection panel. The court found that Allen's speaking out to Farrell, the press, and the legislature about abuse of inmates at Halawa was a motivating factor in the actions taken against him.
 
 
 8
 The court made these determinations notwithstanding the fact that many of the defendants' actions had been upheld as appropriate by a hearing officer and Internal Affairs investigator, and despite the district court's finding that Allen's own personality and conduct contributed to his problems at Halawa. The court made adverse credibility findings with respect to the testimony of Hall and Iranon regarding the reasons for the actions they took against Allen.
 
 
 9
 The defendants appeal the judgment entered in favor of Allen on all counts of his complaint. They present two issues for review: (1) whether the district court erred in applying a "mixed-motives" analysis that shifted the burden to the defendants to show, after Allen made out a circumstantial case of retaliation, that the defendants would have taken the challenged actions against Allen even if he had not engaged in the protected conduct; and (2) whether sufficient evidence supports the district court's findings that the defendants retaliated against Allen.[3]
 
 II. The Mt. Healthy Analysis.
 
 10
 The defendants contend that the district court erroneously applied a "mixed-motive" analysis to this case. This argument refers to the analysis set forth in Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Under the Mt. Healthy framework, Allen first had to show that his conduct was constitutionally protected and that the conduct was a "substantial" or "motivating" factor in the defendants' employment decisions. See Mt. Healthy, 429 U.S. at 287, 97 S.Ct. 568. After he made these showings, the defendants could escape liability only by sustaining the burden of proving "by a preponderance of the evidence that[they] would have reached the same decision ... even in the absence of the [plaintiff's] protected conduct." Id. (quoted in Gilbrook v. City of Westminster, 177 F.3d 839, 853-54 (9th Cir.1999)). The defendants would have preferred that the district court apply the Title VII formula of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which allocates burdens of proof more favorably to defendants. Under McDonnell Douglas, after the plaintiff establishes a prima facie case of discrimination, the employer need only articulate a legitimate non-discriminatory reason for its actions, and the plaintiff then has the burden of proving that the employer's neutral reasons for its actions were a pretext for discrimination. See id. at 804-05, 36 L.Ed.2d 668.
 
 
 11
 Allen's case, however, is one of First Amendment retaliation, as was Mt. Healthy, not of Title VII discrimination. Mt. Healthy governs claims that an employee has been punished in retaliation for exercising First Amendment rights. See, e.g., Board of County Comm'rs v. Umbehr, 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996).
 
 
 12
 The defendants concede, as they must, that we have applied the Mt. Healthy analysis to claims of retaliation for the exercise of First Amendment rights. They contend, however, that the Mt. Healthy analysis is confined to cases in which the plaintiff has proved its prima facie case of retaliation by direct evidence, and that it does not apply when the plaintiff, like Allen, has presented only a circumstantial case of retaliation. For this distinction between circumstantial and direct evidence, the defendants rely primarily on such Title VII cases as Taylor v. Virginia Union University, 193 F.3d 219, 232 (4th Cir.1999) (en banc).
 
 
 13
 We need not delve into the Title VII cases, however, because it is clear that this circuit has consistently employed the Mt. Healthy analysis in cases of First Amendment retaliation without regard to whether the evidence of retaliatory motive was direct or circumstantial. See, e.g., Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 750-53 (9th Cir.2001) (finding that the circumstantial evidence provided was insufficient to show a retaliatory motive); Gilbrook, 177 F.3d at 859(finding a retaliatory motive based on direct and circumstantial evidence); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1315 (9th Cir.1989) (finding a retaliatory motive based on circumstantial evidence); Peacock v. Duval, 694 F.2d 644, 647 (9th Cir.1982) (concluding that there was sufficient direct and circumstantial evidence to support a finding of retaliatory motive); Wagle v. Murray, 560 F.2d 401, 403 (9th Cir.1977) (concluding there was sufficient circumstantial evidence to support a finding of retaliatory motive). These cases did not regard as material any distinction between direct and circumstantial evidence, but simply required the plaintiff to prove that the protected speech was "a ... motivating factor" in the challenged employment action. See, e.g., Keyser, 265 F.3d at 750 (quoting Umbehr, 518 U.S. at 675, 116 S.Ct. 2361). None of the case law of this circuit provides support for the contention that the Mt. Healthy framework applies only where the plaintiff presents direct evidence of a retaliatory motive. Nearly all of the case law of the other circuits is to the same effect.[4]
 
 
 14
 We conclude that the Mt. Healthy mixed-motive analysis applies to First Amendment claims, regardless of whether the plaintiff uses direct or circumstantial evidence to prove that there was a retaliatory motive behind the adverse employment action.
 
 
 15
 III. The application of the Mt. Healthy analysis.
 
 
 16
 Alternatively, the defendants contend that the district court misapplied the Mt. Healthy framework by using a hybrid of the McDonnell Douglas "pretext" analysis and the mixed-motive Mt. Healthy analysis, and by inappropriately mixing in a negligence standard as well. We find no error.
 
 
 17
 The fact that the district court discussed pretext in its findings does not mean that it strayed from a proper application of Mt. Healthy. Evidence of pretext has a place in the Mt. Healthy analysis. Courts determining whether a plaintiff has met his burden under Mt. Healthy often look to evidence that the employer's proffered reasons for the challenged decision were pretextual. See, e.g., Soranno's Gasco, Inc., 874 F.2d at 1315-16; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (in a discrimination case, "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of [an impermissible motive], and it may be quite persuasive."). The court's reference to pretext, therefore, was consistent with a Mt. Healthy analysis.
 
 
 18
 We also reject the defendants' contention that the district court's employment of negligence terminology in some findings indicates that an improper, negligence standard was applied when intentional retaliation was required. The district court did not apply a negligence standard.[5] The "should have known" terminology used by the court is relevant only to the final prong of the Mt. Healthy analysis. Under the mixed-motive analysis of Mt. Healthy, Allen did not need to show that the actions taken against him were wrongful or inappropriate in themselves. See Soranno's Gasco, Inc., 874 F.2d at 1315-16. He was required to show only that retaliation was a motivating factor. The district court found that Penarosa and Iranon acted with a retaliatory motive. In stating that these defendants "knew or should have known" that their actions were inappropriate responses to Allen's conduct, the district court was not applying a negligence standard; it was merely reciting evidence that suggested that Penarosa and Iranon would not have taken these actions absent the retaliatory motive. The district court's analysis was not erroneous.
 
 
 19
 IV. Sufficiency of the evidence.
 
 
 20
 The defendants contend that, whatever the standard, there was insufficient evidence to support the district court's findings of retaliatory motives on the part of the defendants. We review for clear error the district court's findings of fact following a bench trial. See Rand v. Rowland, 154 F.3d 952, 957 n. 4 (9th Cir.1998) (en banc). This standard is significantly deferential, and we will accept the lower court's findings of fact unless we are left with the definite and firm conviction that a mistake has been committed. See Cree v. Flores, 157 F.3d 762, 768 (9th Cir.1998). We find no clear error here.
 
 
 21
 Allen alleged that he was punished for exercising his First Amendment rights. To succeed in establishing his claim, he had to establish by a preponderance of the evidence (1) that he engaged in conduct protected by the First Amendment, and (2) that this constitutionally protected conduct was a motivating factor in the adverse actions taken against him. See Mt. Healthy, 429 U.S. at 287, 97 S.Ct. 568. The defendants then could have escaped liability only if they had demonstrated by a preponderance of the evidence that they would have taken the same actions absent the protected conduct. See id.
 
 
 22
 The district court found that the defendants retaliated against Allen for two incidents: his interview with Farrell in March 1994 and his appearance before the Hawaii legislature in October 1995. The court had previously determined that these two incidents involved constitutionally protected speech and the defendants have not challenged that determination.
 
 
 23
 The employment actions that the district court found to be retaliatory were a five-day lockout starting February 6, 1995, a thirty-day lockout starting about May 9, 1995, a number of Internal Affairs investigations against Allen, and the defendants' passing over Allen for the permanent Physician II position in early 1997. The defendants do not dispute that these actions qualify as adverse employment actions.
 
 
 24
 In order to retaliate against an employee for his speech, an employer must be aware of that speech. Keyser, 265 F.3d at 750-51. With regard to Allen's interview with Farrell, there is clear evidence that Hall knew of the discussion: Farrell sent a copy of the transcript of Allen's statement to George Sumner, the Director of the Public Safety, who sent it to Hall. The court failed to make an explicit finding that Penarosa and Iranon knew of Allen's statement to Farrell. Nonetheless, their knowledge of the speech is implicit in the court's finding that they retaliated against Allen because of it. There is evidence in the record sufficient to allow a reasonable trier of fact to reach this finding. Allen's statement gave details of extensive and serious abuse in the prison and resulted in the reassignment of several inmates away from the guards accused of abusing them. It would be reasonable to infer that administrators, including Iranon and Penarosa, would have been made aware of the statement during the process of reassigning inmates. The court also found that Allen was subjected to escalating harassment at the facility from the time he made the statement, suggesting that there was fairly widespread knowledge of the statement. There was also evidence that Farrell's duties included advising and providing services to the Departments of Corrections and Public Safety. In view of the seriousness of Allen's charges, it is reasonable to infer that he informed the Director of the Department of Public Safety of them, and that the Director, George Sumner, passed this information to his successor, Iranon, shortly thereafter. Because the allegations were so significant, it is reasonable to infer that Iranon would have spoken with Penarosa about them.
 
 
 25
 Finally, all the defendants clearly were aware of Allen's appearance before the legislature. This appearance took place before the final act of retaliation — denying Allen the Physician II position. We conclude, therefore, that there was sufficient evidence of the defendants' knowledge of Allen's constitutionally protected activity.
 
 
 26
 The defendants contend that, even if knowledge of the speech was shown, Allen failed to present sufficient evidence that the defendants' actions were retaliatory. This court has noted that, when in the past we have found plaintiffs to have presented a triable issue of retaliation, the plaintiffs have presented either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence of such motive. The three types of circumstantial evidence are: (1) proximity in time between the protected speech and the alleged retaliation; (2) the employer's expressed opposition to the speech; and (3) other evidence that the reasons proffered by the employer for the adverse employment action were false and pretextual. Keyser, 265 F.3d at 751-52. We do not need to determine whether these three categories of circumstantial evidence exhaust the possibilities for a circumstantial case of retaliation, because Allen presented circumstantial evidence that falls into the first and third of these categories.[6]
 
 
 27
 The district court made extensive findings of fact. The findings supporting the district court's determination regarding the first lockout included timing from which a finder of fact could logically infer the lockout was retaliatory and evidence that the reasons given for the lockout were false and pretextual.
 
 
 28
 Allen had worked at Halawa for years, during which he was involved in several disputes over security, without his performance being found deficient enough to warrant discipline or an Internal Affairs investigation. After he began to criticize the prison under Hall's administration, his conduct was found to be so serious that it warranted Internal Affairs investigations and a lockout. This proximity in time constitutes circumstantial evidence of retaliatory motive. See Schwartzman v. Valenzuela, 846 F.2d 1209, 1212(9th Cir.1988). The protected statement was made eleven months before the first lockout and the initiation of the Internal Affairs investigations. Although an inference from temporal proximity would have been stronger had the gap in time been smaller, an eleven-month gap in time is within the range that has been found to support an inference that an employment decision was retaliatory. See id. at 1212(finding retaliation where an employer terminated an employee three years after the employee began openly criticizing the department); see also Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1566 (11th Cir.1995) (noting that undue focus on timing distorts the sufficiency of evidence analysis, which is a "fact-bound, common-sense inquiry"). But see Keyser, 265 F.3d at 752 (finding that, where there was a two-year gap between protected speech and an adverse action, the proximity in time did not in itself give rise to an inference of retaliation).[7]
 
 
 29
 The district court also found that Hall misrepresented facts about the incidents that allegedly triggered the lockout.[8] The primary reason given by Hall for the lockout was Allen's conduct following the assault on an inmate, William Smith. The court found that Hall gave false testimony about when he learned of the assault on Smith. The court also found that Allen did report the assault up the chain of command, discrediting Hall's testimony that he ordered a lockout of Allen because Allen failed to report the assault. The court found that the second reason given for the lockout — that Allen informed Smith's attorney of the assault — could not support such an extreme measure either, because Allen's conduct was "within Departmental policy, albeit somewhat questionable." In addition, the court found that Hall did not follow standard procedures for locking out Allen. The misrepresentations and the failure to follow standard procedures both permit an inference that the reasons given by Hall for the lockout were false and pretextual.
 
 
 30
 The district court's findings that Hall misrepresented the events that led to the lockout, the timing of the punitive measures, and the knowledge of Allen's statements are sufficient to support the court's ultimate finding that Hall, Penarosa, and Iranon retaliated against Allen for speaking out. We find no error.
 
 
 31
 With regard to the Internal Affairs investigations, the district court consistently found that these investigations were inappropriate and that the difficulties with Allen should have been handled administratively. The defendants contend that these matters fell within the standard jurisdiction of Internal Affairs. It is not enough, however, for the defendants to show that they justifiably could have taken the adverse action; they must demonstrate that they would have done so. See Gillette v. Delmore, 886 F.2d 1194, 1198 (9th Cir.1989).
 
 
 32
 Although the incidents of misconduct by Allen technically fell within the scope of Internal Affairs' duties, the district court heard expert testimony that, in practice, the types of incidents involving Allen would not normally have been referred to Internal Affairs. There was extensive testimony, by Allen's and the defendants' experts, that: (1) Internal Affairs investigations are an extreme remedy, usually reserved for severe events at a prison; (2) a disproportionate number of the total Internal Affairs investigations in Hawaii during 1995 and 1996 involved Allen; (3) Allen was singled out for investigation after incidents in which conduct by other staff was equally or more egregious than Allen's; (4) the types of incidents that triggered Internal Affairs investigations of Allen would not normally be referred to Internal Affairs; and (5) most if not all of the Internal Affairs investigations of Allen should not have been referred to Internal Affairs, but should have been handled administratively. The record overwhelmingly supports the district court's determination that the multiple Internal Affairs investigations of Allen were inappropriate. There was sufficient evidence to find that they would not have been undertaken absent a retaliatory motive. There was no clear error here.
 
 
 33
 As to the failure to hire Allen for the Physician II position, the district court meticulously made findings of fact leading to the reasonable conclusion that Allen was passed over for the position without any legitimate reason. The court found that the process ran counter to established guidelines and policies, and that the defendants' explanations for their actions were either suspicious or not credible. Coupled with the pattern of harassment that the court had already found with respect to the retaliatory lockouts and Internal Affairs investigations, it was reasonable to conclude that, in lieu of a legitimate reason, there was an illegitimate retaliatory motive for passing over Allen. This court defers to the district court's credibility findings and its findings of fact, although there may be other permissible views of the evidence. Anderson, 470 U.S. at 573-74, 105 S.Ct. 1504. We find no error here.
 
 
 34
 V. Conclusion.
 
 The judgment of the district court is
 
 35
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The evidence at trial makes clear what the district court meant by its findings that certain incidents were, and others should have been, handled "administratively" as opposed to being referred to Internal Affairs. The court heard testimony that Internal Affairs investigations are reserved for serious events at a prison, and that most "personnel" and "management" matters are handled without Internal Affairs involvement. This "administrative" handling of a matter generally involves the employee and his supervisor, may involve the personnel division or mediation, or may be bumped up the chain of command to the Warden
 
 
 [2]
 The district court mistakenly stated that there were three lockouts. The Findings of Fact discuss only two lockouts. The difference between two and three retaliatory lockouts, particularly in light of the other retaliatory actions taken, does not affect the outcome of the case
 
 
 [3]
 The defendants also argue that, if they succeed in overturning the finding that they violated § 1983, then it necessarily follows that the finding that they conspired to violate § 1983 cannot standSee Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir.1989). Because we affirm the district court's findings that the defendants violated § 1983, we need not address this contention.
 
 
 [4]
 It appears that only the Eighth Circuit has deliberately decided that theMt. Healthy burden-shifting analysis should not apply in First Amendment retaliation cases that are based solely on circumstantial evidence. In Graning v. Sherburne County, a political association retaliation case brought under § 1983, the Eighth Circuit outlined an allocation of proof straight out of McDonnell Douglas. 172 F.3d 611, 615 (8th Cir.1999). The court rejected the plaintiff's argument that her claim should have been analyzed under the Mt. Healthy standard, stating that the "so-called mixed motive analysis under Mt. Healthy is only used if a complainant has come forward with evidence that directly reflects the use of an illegitimate criterion in the challenged decision." Id. at 615 n. 3 (internal quotation and citation omitted); see also Ingram v. Johnson, 187 F.3d 877, 880 (8th Cir.1999).
 The only other hint that the McDonnell Douglas analysis is appropriate for a First Amendment retaliation claim is a First Circuit case that conflated the McDonnell Douglas and Mt. Healthy analyses. See Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 41 (1st Cir.1992). This case appears to be an anomaly, however. The following year, the First Circuit returned to the Mt. Healthy analysis and emphasized the distinction between First Amendment retaliation cases and Title VII cases. Acevedo-Diaz v. Aponte, 1 F.3d 62, 66-67 (1st Cir.1993); see also Padilla-Garcia v. Rodriguez, 212 F.3d 69, 77-78 (1st Cir.2000).
 No other circuits have adopted the analysis urged by the defendants. See, e.g., Gonzales v. Dallas County, 249 F.3d 406, 412 n. 6 (5th Cir.2001); Pugh v. City of Attica, 259 F.3d 619, 629 (7th Cir.2001); Ballard v. Muskogee Reg'l Med. Ctr., 238 F.3d 1250, 1252 (10th Cir.2001); Hellstrom v. U.S. Dep't of Veterans Affs., 201 F.3d 94, 97 (2d Cir.2000); Sowards v. Loudon County, 203 F.3d 426, 431 n. 1 (6th Cir.2000); Lynch v. City of Boston, 180 F.3d 1, 12 (1st Cir.1999); Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1075 (3d Cir.1990).
 
 
 [5]
 The district court properly stated the rule that proof of negligence is insufficient to support a claim under § 1983See Davidson v. Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).
 
 
 [6]
 There is also evidence that the defendants expressed opposition to Allen's speech. After Allen gave an interview to a local newspaper about a case of brutality by a guard against an inmate, Iranon complained of personnel "go[ing] to the media," and stated that he was tired of being blamed for the problems. However, it is not clear from the district court's decision that the court considered the interview with the newspaper one of the events leading to retaliation. It is possible that the court considered the interview incident to have merged into the appearance before the legislature, because it appears that the newspaper story was the catalyst for the legislative hearings
 
 
 [7]
 The longer gap between Allen's statement and later employment actions does not affect the analysis of whether those actions were retaliatory because the court found that all the adverse employment actions were sufficiently similar and related that they constituted a continuing violation
 
 
 [8]
 A trial court's finding that a witness is not credible is entitled to special deferenceAnderson v. City of Bessemer, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).