# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-2972

_____

LaTanya Thomas, Special Administrator of the Estate of Tyler Thomas

*Plaintiff - Appellant*

v.

Board of Trustees of the Nebraska State Colleges

*Defendant - Appellee*

Joshua Keadle

*Defendant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 16, 2016
Filed: July 1, 2016
[Unpublished]

_____

Before MURPHY, BRIGHT, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

LaTanya Thomas ("Thomas"), the Special Administrator of the Estate of Tyler Thomas ("Tyler"), appeals the district court's[1] adverse grant of summary judgment on her Title IX, 20 U.S.C. § 1681 et. seq., claim against the Board of Trustees of the Nebraska State Colleges ("the Board"). She asserts that the Board showed deliberate indifference to the substantial risk of harm Joshua Keadle posed to female students on the Peru State College ("Peru State") campus, resulting in Tyler's abduction, sexual assault, and murder by Keadle. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

We view the facts in the light most favorable to the nonmovant, Thomas. See Roe v. St. Louis Univ., 746 F.3d 874, 877-878 (8th Cir. 2014). In the fall of 2010, 19-year-old Tyler was a female freshman at Peru State and lived in an on-campus dormitory, next door to Joshua Keadle, then 29 years old. Keadle arrived at Peru State in the fall of 2010. Upon his arrival, he volunteered as a strength and conditioning assistant for Peru State's women's basketball team. A background check, required for Keadle to continue in the assistant position, revealed only minor traffic offenses. Around that time, Keadle came under suspicion for the theft of a laptop, and Director of Housing and Security William Stonebarger received an email indicating that Keadle had been convicted of a robbery, accused of other robberies, and had "a forcible fondling (RAPE) on a 18yr old female charge on record, but the charges were droped [sic]." Stonebarger persuaded another Peru State professional to run a second background check; in addition to the minor traffic offenses, it revealed a misdemeanor theft conviction. The Peru State Athletic Director contacted the athletic director of a college that Keadle had previously attended for a reference, and that athletic director recommended that Peru State's women's basketball team not hire Keadle. The Peru State Athletic Director decided not to hire Keadle and

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

instructed the women's basketball coach that Keadle was not to have any contact with the women's basketball team.

During September 2010, two students complained that Keadle sexually harassed them, and on-campus disciplinary proceedings against Keadle were instituted by Peru State's Crisis Assessment, Response, and Evaluation team. The first complaint involved continuous sexually inappropriate comments and one occasion on which Keadle waited for the student to finish her work shift and then asked her for a kiss once alone with her. Stonebarger recommended to the Vice President for Enrollment Management that Keadle be removed from the dormitories if he pled responsible, but she disagreed. Keadle pled responsible and was instead sanctioned with online education activities and 10 hours of community service, neither of which he completed. A hearing was held on the second complaint, which alleged continuous comments and a deceptive Facebook communication. At the hearing, the complaining student stated that Keadle had made her feel uncomfortable but not threatened and apologized to Keadle. She later made a statement to Thomas's counsel that she was afraid of Keadle and had felt ambushed and intimidated during the hearing. At the time, Keadle was failing his classes and later in the semester he kicked down his dormitory room door.

On December 3, 2010, around 1:00 a.m., Tyler was recorded on security camera walking around campus alone. After that morning, she was never seen again. Keadle was questioned by the police and eventually admitted to being alone with Tyler near the Missouri River in the early morning of December 3, but invoked his privilege against self-incrimination and has since refused to be deposed. Available evidence indicates that Keadle was the last person to see Tyler alive. Tyler's body has never been recovered, and she has been declared dead by a Nebraska state court.

Thomas filed a complaint in the district court against the Board, which governs Peru State, under Title IX, 20 U.S.C. § 1681, et. seq. Thomas alleged that the Board

was deliberately indifferent to the substantial risk of harm posed by Keadle, in violation of Title IX, resulting in Tyler's abduction, rape, and murder. The district court granted summary judgment to the Board and dismissed the claim. Thomas appealed.

The district court found that, viewing the facts in the light most favorable to Thomas, no genuine issue of material fact existed as to whether the Board had actual knowledge that Keadle posed a substantial risk of sufficiently severe harm to students based on his previous known conduct, or whether the Board acted with deliberate indifference, both of which are required for a plaintiff to succeed in a Title IX claim based on a student's actions against the plaintiff. Upon careful de novo review, see Roe, 746 F.3d at 881, we agree. See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291 (1998) (finding a single complaint of a teacher making inappropriate comments insufficient to create actual knowledge of a sexual relationship between the teacher and a student); Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 780, 782 (8th Cir. 2001) (finding knowledge of rumors of inappropriate conduct, where the police and school investigations on the matter were inconclusive, insufficient to establish actual knowledge); Escue v. N. Okla. Coll., 450 F.3d 1146, 1154 (10th Cir. 2006) (indicating that knowledge of less severe past misconduct is unlikely to establish knowledge that the party poses a substantial risk of abuse (internal quotations omitted)); Roe, 746 F.3d at 882 (finding that an institution "must merely respond to known peer harassment in a manner that is not clearly unreasonable." (quoting Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 649 (1999))).

After careful review, we affirm the district court's detailed and thoughtful analysis and decision. See 8th Cir. R. 47B.

_____