**WESTERN PARCEL EXPRESS,**
Plaintiff–Appellant,

v.

**UNITED PARCEL SERVICE OF AMERICA, INC., a Delaware corporation; United Parcel Service, Inc., an Ohio corporation; United Parcel Service, Inc., a New York corporation; and United Parcel Service General Services Co., Defendants–Appellees.**

No. 98–16338.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 1999

Memorandum Filed June 25, 1999

Order and Opinion Filed Sept. 14, 1999

Thomas Gundlach, San Francisco, California, for the plaintiff-appellant.

Paul T. Friedman, Morrison and Foerster, San Francisco, California, for the defendants-appellees.

Before: JOSEPH T. SNEED, DAVID R. THOMPSON and WILLIAM A. FLETCHER, Circuit Judges.

## ORDER

The Memorandum disposition filed June 25, 1999, is redesignated as an authored Opinion by Judge Sneed.

## OPINION

SNEED, Circuit Judge:

Western Parcel Express ("WPX") appeals from the decision of the United States District Court for the Northern District of California, the Honorable Charles A. Legge, Presiding, which granted summary judgment in favor of United Parcel Service of America, Inc., et al. ("UPS"). We affirm.

WPX in its complaint alleged that UPS: (1) monopolized and attempted to monopolize the package delivery market through predatory pricing; and (2) illegally restrained trade in the package delivery market by entering into exclusive dealing contracts with buyers. The parties stipulated to bifurcated proceedings and limited discovery to the issue of whether UPS had the required market power in the relevant market. At the close of discovery on this issue, UPS moved for summary judgment, arguing that WPX failed to establish the existence of market power in the relevant market. The district court agreed and granted summary judgment in favor of UPS. WPX now appeals that Order. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

### I.

To state a valid claim under Section 2 of the Sherman Antitrust Act for predatory pricing, WPX must demonstrate that UPS has sufficient market power. *See Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 51 F.3d 1421, 1434 (9th Cir.1995). To demonstrate market power WPX must: (1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run.

*Id.* (citations omitted). The district court determined that WPX failed either to establish the proper boundaries of the relevant market or to demonstrate UPS' market share in that relevant market. We agree. Moreover, even if WPX has estab-

lished properly the contours of the relevant market and has demonstrated that UPS owns a dominant share in that market, we nevertheless conclude that WPX's claims under Section 2 must fail because it cannot demonstrate that there are significant barriers to entry or expansion in the market it has defined. We focus on that element for purposes of this disposition.

### II.

We have defined entry barriers as "additional long-run costs that were not incurred by incumbent firms but must be incurred by new entrants," or "factors in the market that deter entry while permitting incumbent firms to earn monopoly returns." *Los Angeles Land Co. v. Brunswick Corp.,* 6 F.3d 1422, 1427–28 (9th Cir. 1993). "The main sources of entry barriers are: (1) legal license requirements; (2) control of an essential or superior resource; (3) entrenched buyer preference; (4) capital market evaluations imposing higher capital costs on new entrants; and, in some situations, (5) economies of scale." *Rebel Oil,* 51 F.3d at 1439. "To justify a finding that a defendant has the power to control prices" sufficient to warrant judicial intervention, "entry barriers must be ... capable of constraining the normal operation of the market to the extent that the problem is unlikely to be self-correcting." *Id.* (citing *United States v. Syufy Enters.,* 903 F.2d 659, 663 (9th Cir.1990)).

WPX, in this appeal, claims that UPS' exclusive dealings contracts have created insurmountable barriers to entry. WPX argues that it presented sufficient evidence to withstand summary judgment that UPS entered into exclusive dealing contracts that will significantly constrain WPX's access to the parcel delivery market and likewise will prevent other carriers from entering the market. The district court rejected WPX's exclusive dealings contracts argument, concluding that the contracts were not actually exclusive dealings contracts that hindered competition. We agree.

■ First, the challenged contracts had termination provisions that allowed a customer to terminate the contract for any reason with very little notice. *See Omega Environmental, Inc. v. Gilbarco, Inc.,* 127 F.3d 1157, 1163 (9th Cir.1997) (holding that where contracts could be terminated in sixty days, "short duration and easy terminability" substantially negated potential to foreclose competition). In addition to being terminable on short notice, a UPS customer could cancel the contract for "virtually any reason at any time."

Second, the contracts did not foreclose consumers from entering into contracts with other delivery service providers. A company that entered into one of these contracts with UPS could nonetheless contract with another carrier for parcel delivery service. "An exclusive dealing contract involves a commitment by a buyer to deal only with a particular seller." L. Sullivan, *Law of Antitrust* § 163, at 471 (1977). The district court properly concluded that UPS' contracts are volume discount contracts, not exclusive dealings contracts. Such volume discount contracts are legal under antitrust law. *See Fedway Assocs., v. United States Treasury,* 976 F.2d 1416, 1418 (D.C.Cir.1992) (holding that volume discount contracts provide pro-competitive effects). Because the contracts do not preclude consumers from using other delivery services, they are not exclusive dealings contracts that preclude competition in violation of the Sherman Antitrust Act.[1]

■ WPX failed to present evidence that there were barriers to expansion in the relevant market. While it is true that WPX's profit margins have decreased since the deregulation of the package delivery market, that fact alone is insufficient to sustain an antitrust claim. UPS has presented evidence that during the time period in which WPX alleges antitrust injury, the market has actually expanded; other carriers, including Roadway Packaging Systems, Inc. ("RPS"), have entered the market.

Moreover, WPX has seen significant increase in profits during that time period as well. Between 1994 and 1997, WPX's revenues in the geographic market it defined (i.e., California, Arizona and Nevada) grew from $29 million to $47 million. Although it is true that WPX's profit margin decreased from a remarkable rate of twenty-percent in 1993 to a robust, albeit significantly lower profit margin of ten-percent in 1997, WPX still has experienced significant growth.

In addition, competitors such as RPS have aggressively entered the market during the relevant time period. Since deregulation of the package delivery market in 1995, RPS has penetrated the next-day, ground based package delivery market and established a substantial presence there. RPS now offers next-day, local and regional coverage throughout a significant portion of California, Arizona and Nevada.[2] Uncontradicted evidence also demonstrates that both UPS and WPX consider RPS a significant competitor. In fact, in a WPX business plan, WPX proclaimed that RPS' anticipated entry into the next-day, ground-based package delivery market in California is "Western Parcel Express's single greatest threat."

Federal Express ("FedEx") now owns RPS, thereby strengthening RPS' presence in the relevant package delivery market as defined by WPX. In addition, FedEx, independent of its purchase of RPS,

---

1. WPX also contends that these contracts unreasonably restrain trade in violation of Section 1 of the Sherman Anti–Trust Act. Because we conclude that the contracts are not exclusive dealings contracts as WPX argues, the Section 1 claim fails as well.

2. WPX contended at oral argument that RPS does not provide next-day service in the western United States. WPX's own evidence belies this assertion. WPX presented evidence in the form of declarations that demonstrate that RPS does indeed provide next-day delivery service in the western United States and continues to develop routes and expand its next-day presence in the market in that region.

has made significant headway into the package delivery market in the western United States. UPS presented evidence that FedEx has spent $200 to $300 million per year over the last several years developing its ground delivery capabilities so that it can compete in the market. To compete more effectively with UPS and WPX in the western United States, FedEx has undertaken the task of increasing its route density in the region and has broadened the services it offers to consumers. FedEx now has expanded its services and provides consumers with the opportunity to deliver their time-sensitive packages, via ground delivery, at a cost that competes with prices set by UPS and WPX.

We therefore conclude, based upon uncontradicted evidence in the record, that UPS does not have nor will have the ability to exclude competition in the relevant market as defined by WPX. "Time after time, we have recognized … [a] basic fact of economic life: A high market share, though it may ordinarily raise an inference of monopoly power, will not do so in a market with low entry barriers or other evidence of a defendant's inability to control prices or exclude competitors." *Syufy Enters.*, 903 F.2d at 664 (quoting *Oahu Gas Serv., Inc. v. Pacific Resources Inc.*, 838 F.2d 360, 366 (9th Cir.1988)). There is simply no evidence before us that there are unnatural market barriers precluding robust competition in the relevant market.

For the foregoing reasons, the decision of the district court is

AFFIRMED.