**EPICENTER RECOGNITION, INC., Plaintiff–Appellee,**

v.

**JOSTENS, INC., Defendant–Appellant.**

No. 02–56589.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 2003.

Decided Nov. 20, 2003.

Maxwell M. Blecher, Esq., Donald R. Pepperman, Esq., Los Angeles, CA, for Plaintiff–Appellee.

Daniel G. Swanson, Esq., Gibson, Dunn & Crutcher, LLP, Robert P. Mallory, Esq., McDermott, Will & Emery, Los Angeles, CA, for Defendant–Appellant.

Before: REINHARDT, FERNANDEZ, and RAWLINSON, Circuit Judges.

MEMORANDUM *

Jostens, Inc. appeals the district court's decision that it violated 15 U.S.C. § 2 by monopolizing trade in high school graduation products, and also violated California Business and Professions Code § 17200. We reverse.

(1) *Monopoly.* In order to prevail on a monopolization claim, the plaintiff, here Epicenter Recognition, Inc., had to show, inter alia, that Jostens possessed monopoly power in the relevant market. *See Image Technical Servs., Inc. v. Eastman Kodak Co.,* 125 F.3d 1195, 1202 (9th Cir.1997). That, in turn, means that Jostens must

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

have had the " 'power to control prices or exclude competition.' " *Id.* (citation omitted). That is, there must be either direct or circumstantial evidence of monopoly power. *See Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 51 F.3d 1421, 1434 (9th Cir. 1995); *Oahu Gas Serv., Inc. v. Pac. Res., Inc.,* 838 F.2d 360, 363–67 (9th Cir.1988).

There is no direct evidence on this record. *See id.; Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1475 (9th Cir.1997). Therefore, we must turn to the consideration of circumstantial evidence. To demonstrate monopoly power by that route, it was necessary for Epicenter to: "(1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil,* 51 F.3d at 1434 (citations omitted).

The relevant market was defined.[1] Moreover, there can be little doubt that Jostens, with an overall market share in the 80 percent range, does hold a dominant market position. *See Image Technical,* 125 F.3d at 1206; *see also Rebel Oil,* 51 F.3d at 1437–38. Of course, we cannot stop there, and must go on to see whether the barriers to entry are sufficient to give Jostens the ability to maintain that dominant position by use of its Total Service Program documents (TSPs). *See United States v. Syufy Enters.,* 903 F.2d 659, 665–66 (9th Cir.1990); *Hunt–Wesson Foods, Inc. v. Ragu Foods, Inc.,* 627 F.2d 919, 924 (9th Cir.1980). It is on that rock that Epicenter's case founders, and it is there that the district court went astray.

In order to circumstantially demonstrate that Jostens has monopoly power, Epicenter had to show that there were barriers to entry and to expansion. *See Rebel Oil,* 51

F.3d at 1439; *see also Metronet Servs. Corp. v. US West Communications,* 329 F.3d 986, 1006 (9th Cir.2003) (the key is competitor's ability to take business away from the incumbent). There can be a number of sources for entry barriers. *See Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'ns, Inc.,* 108 F.3d 1147, 1154 (9th Cir.1997). Epicenter suggests that Jostens' good reputation is itself an entry barrier. It is not. *See Am. Prof'l Testing,* 108 F.3d at 1154. Closer to the mark is the claim that the relevant TSPs are exclusive dealing contracts, because we have indicated that exclusive dealing contracts *can* create entry barriers. *See Syufy,* 903 F.2d at 667; *see also Omega Envtl., Inc. v. Gilbarco, Inc.,* 127 F.3d 1157, 1162 (9th Cir.1997). But even that is greatly attenuated when the contracts can be terminated at will and upon short notice. *See W. Parcel Express v. United Parcel Serv. of Am., Inc.,* 190 F.3d 974, 976 (9th Cir.1999).

Here the facts clearly show that the schools are not required to deal exclusively with Jostens, and can, with or without TSPs, switch to different or additional vendors at will. The only barrier is the schools' own inertia, their desire to continue with a single vendor as long as they are getting good service and quality, and some undefined moral commitment. But if they should become dissatisfied with Jostens because of a lowering of service, or quality, or because of an increase in prices, they can and will switch—indeed, they have switched to Jostens' competitors, including Epicenter, when they have become discontent or have sought a better arrangement. Still, perhaps the schools' power and attitudes (not Jostens') are sufficient to create a small, though leaky, entry barrier. *See F.T.C. v. Warner Communications Inc.,*

---

1. There is no dispute on appeal about the district court's definition of that market as

high school graduation products—class rings, announcements, and caps and gowns.

742 F.2d 1156, 1163 (9th Cir.1984); *see also U.S. Philips Corp. v. Windmere Corp.*, 861 F.2d 695, 703 (Fed.Cir.1988). But that does not extend to the other branch of Epicenter's conjunctive burden—expansion restrictions.

It is apparent from the record that if Jostens should attempt to increase prices or decrease quality, Jostens' existing competitors could easily and quickly expand production and pick up the slack. *See Rebel Oil*, 51 F.3d at 1441; *Syufy*, 903 F.2d at 666–67; *see also Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 761–762 (7th Cir.1996); *Ball Mem'l Hosp., Inc. v. Mutual Hosp. Ins., Inc.*, 784 F.2d 1325, 1335 (7th Cir.1986).

Jostens may have a dominant market share, but it lacks real puissance—any misstep can lead to a school's desire to switch to others, and many shifted to Jostens' competitors—including the new, inexperienced Epicenter—during the heyday of the TSPs because the barrier is slight and the ability of the competition to expand is great. We are, therefore, constrained to hold that the district court clearly erred when it decided that Jostens had monopoly power. *See Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1425 (9th Cir.1993). That being so, we need not, and do not, consider the other elements of the claim that Jostens violated § 2.[2]

(2) *Unfair Competition.* The district court granted an injunction under California law on the theory that Jostens had engaged in unfair competition when it used the TSPs. *See* Cal. Bus. & Prof.Code §§ 17200, 17203. We do not agree.

Because Jostens' actions were not illegal, they were not, ipso factor, unfair. *See Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180, 973 P.2d 527, 539–540, 83 Cal.Rptr.2d 548, 561 (1999). Of course, in theory, its actions could be unfair even if not illegal. *See id.* at 180, 973 P.2d at 540, 83 Cal.Rptr. at 561. It is unclear whether the district court found that Jostens' actions violated the unfair competition law on that theory, but, at any rate, the facts do not indicate that those actions posed a significant threat to competition under the circumstances. *See id.* at 186–87, 973 P.2d at 544, 83 Cal.Rptr. at 565; *Scripps Clinic v. Superior Court,* 108 Cal.App.4th 917, 939, 134 Cal.Rptr.2d 101, 116 (2003). Therefore, the district court erred when it founded an injunction on California's unfair competition law.

REVERSED.[3]

REINHARDT, Circuit Judge, dissenting.

I respectfully dissent from my colleagues' decision to reverse the district court's through and reasonable decision.

In overturning the district court's decision, my colleagues have disregarded countless findings of fact—all, of course, made by the decisionmaker best positioned to make sense of a complex morass of often-conflicting evidence. A district court's findings of fact should not be disturbed unless we have a "definite and firm conviction that a mistake has been committed." *Allen v. Iranon,* 283 F.3d 1070, 1076 (9th Cir.2002). Indeed, "[w]here there are

---

**2.** As a result of this determination, we also need not consider whether the antitrust immunity (state action) doctrine has any application here. *See Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 874–75, 878 (9th Cir.1987) (outlining doctrine).

**3.** This, of necessity, reverses the grant of damages, an injunction, costs, and attorney's fees pursuant to 15 U.S.C. §§ 15, 26. It also reverses the grant of the injunction under California's unfair competition law. No attorney's fees were asked for or awarded for that alleged violation.

two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Cree v. Flores,* 157 F.3d 762, 769 (9th Cir.1998). It seems plain to me that there are two permissible views of the evidence here.

The issue on which my colleagues and I seem to disagree[1] is whether the district court erred in finding that Jostens' use of Total Service Program agreements (TSPs) acted as sufficient barriers to entry to satisfy the third prong of the "circumstantial evidence" test established by *Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 51 F.3d 1421 (9th Cir.1995). That case expanded the traditional "barriers to entry" test to ask not only whether "there are significant barriers to entry [but also whether] … existing competitors lack the capacity to increase their output in the short run." *Id.* at 1434. The *Rebel Oil* court, analyzing competitors in a predatory pricing dispute, held that

> Market power cannot be inferred solely from the existence of entry barriers and a dominant market share. The ability to control output and prices—the essence of market power—depends largely on the ability of existing firms to quickly increase their own output in response to a contraction by the defendant. Competitors may not be able to increase output if there are barriers to expansion. One such barrier is lack of excess capac-

ity. Excess capacity is the capacity of the rivals in a market to produce more than the market demands at a competitive price. If the existing competitors are producing at full capacity, they may lack the ability to quickly expand supply and counteract a predatory's supercompetitive pricing. On the other hand, if rivals have idle plants and can quickly respond to any predator's attempt to raise prices above competitive levels, the predator will suffer an immediate loss of market share to competitors. In that instance, the predator does not have market power.

*Id.* at 1441 (internal citations omitted).

As the excerpted material should make clear, the *Rebel Oil* test was not meant to establish a mechanical rule holding that every time a competitor has the ability to produce more physical goods at a cheap price, no monopoly power can exist. Rather, we have explained *Rebel Oil's* "key question [to be] whether existing competitors and immediate potential entrants have sufficient capacity to *take business away* from the incumbent monopolist and thereby constrain the incumbent's ability to raise prices above competitive levels." *MetroNet Servs. Corp. v. U.S. West Communications,* 325 F.3d 1086, 1104 (9th Cir. 2003) (emphasis added); *see also Image Technical Serv. Inc. v. Eastman Kodak Co.,* 125 F.3d 1195, 1208 (9th Cir.1997)

---

1. My colleagues admit that there is sufficient evidence to support the district court's finding that the use of TSPs created a "small, though leaky, entry barrier." *See* slip. op. at ——. Though I agree with my colleagues that the entry barrier was not overwhelming, courts generally examine the "practical effects" of exclusive-dealing agreements, not merely the form such agreements take. *See Minnesota Mining and Manufacturing Co. v. Appleton Papers, Inc.,* 35 F.Supp.2d 1138, 1144 (D.Minn.1999). The fact that the TSPs did not legally bind the parties to exclusive dealing is irrelevant; the district court made extensive factual findings about the "practical

effects" of the TSPs—those findings belie my colleagues' claim that the only factor making TSPs exclusive was the "schools' own inertia." The district court found that many school administrators viewed the TSPs as "three … or five-year exclusive contracts" that were in fact "binding" and "exclusive." In other words, the district court interpreted the evidence before it as demonstrating that the TSPs' practical effect, in many instances, was to create exclusive, binding contracts. My colleagues point to *no evidence whatsoever* that demonstrates clear error in the district court's factual findings on this point.

(explaining that the heart of the "barriers to entry" and "barriers to expansion" inquiry is whether the market in question is unlikely to be self-correcting). My colleagues have erred in their mechanical application of the *Rebel Oil* test in lieu of a more straight-forward examination of the market, an examination in which the district court thoroughly engaged—and one that it then reasonably resolved in favor of Epicenter.

While the question of competing firms' abilities to expand output is certainly relevant in a predatory pricing case, it is at best of questionable relevance here. That is because, as the district court explained, the market for in-school sales of graduation products "is a unique market where competition does not necessarily mean lower prices due to the school's role as a gatekeeper." In this market, service and comfort are far more important variables than price; there is a finite number of purchasers (schools) who operate as gatekeepers to the vast sea of consumers; and, schools often tolerate, or in some cases encourage, higher prices from distributors like Jostens because of the suppliers' practice of granting schools rebates on the sales of particular products—the higher the price, the greater the aggregate size of the rebates, all at no cost to the schools. Moreover, the district court found that the practical effect of the TSPs, in many cases, was to deny competitors the ability to approach school administrators about switching suppliers. That finding led the district court reasonably to conclude that, despite Jostens' competitors' ability to expand in the market, Jostens still retained both the ability to exercise *some* control over prices *and* monopoly power by virtue of its ability to shut schools' doors to competitors' attempts to enter. Given the factual circumstances attendant to the market in question here, it makes no sense to conclude, as do my esteemed colleagues, that Epicenter's ability to produce goods quickly and

at a cheap price negated Jostens' market power.

This is by no means an easy case with an obvious result. That the case is difficult, however, makes it all the more unfortunate that my colleagues have so casually disregarded the exceptionally careful and thoughtful findings of fact and law reached by the district court. I would affirm those findings. I respectfully dissent.