# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2311

_____

| | | |
|---|---|---|
| Sarah Cox, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| B. Alan Sugg, President of the | * | Appeal from the United States |
| University of Arkansas, in his official | * | District Court for the |
| and individual capacities, et al., | * | Eastern District of Arkansas. |
| | * | |
| Defendants - Appellants, | * | |
| | * | |
| University of Arkansas, et al., | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: December 7, 2006
Filed: April 27, 2007

_____

Before LOKEN, Chief Judge, BEAM and RILEY, Circuit Judges.

_____

LOKEN, Chief Judge.

Sarah Cox commenced this action against the University of Arkansas at Fayetteville and various individual defendants asserting claims under 42 U.S.C. § 1983, Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, and state law. All the claims are based upon alleged sexual harassment by Professor Mark Cory while Cox was an undergraduate student. Defendants filed motions to

dismiss or for summary judgment. The district court dismissed the Title IX claims, all damage claims against the individual defendants in their official capacities, a conspiracy claim under 42 U.S.C. § 1985, and certain tort claims against Cory. Without addressing the alternative motions for summary judgment, the court denied the Rule 12 motions to dismiss the § 1983 claims for prospective relief against the University administrators in their official capacities, the § 1983 and Arkansas constitutional damage claims and the breach of fiduciary duty claims against the individual defendants, and the tort of outrage claim against Cory. The individual defendants other than Cory appeal the district court's denial of their motion to dismiss the § 1983 damage claims on grounds of qualified immunity. We conclude that these defendants are entitled to summary judgment on the merits of all the remaining federal claims. Accordingly, we reverse with directions to sever the claims against these defendants and to dismiss the state law claims against them without prejudice.

**I.**

Cox's complaint alleged that in the fall of 2003, at the start of her senior year, she went to the home of Professor Cory, her faculty advisor, to write a summary of her junior year studies in France and a grant proposal. After dinner, Cory made sexual overtures, kissed Cox, undressed her, held her down on his bed, and said he wanted sex from her for the next year. Later in the fall, Cory attempted to contact Cox, which resulted in two "emotionally distressing" meetings. When Cox reported the incidents to University officials, she was told that Cory had engaged in this type of behavior with other students in the past, yet Cox was not aware of any "formal discipline" against him. She further alleged that the University "had and has policies and/or customs that tolerated, approved, condoned, and/or allowed such behavior by Cory." Cox asserted sixteen federal and state law tort claims against the University; against University President Alan Sugg, University Chancellor John White, and Professor Cory in their official and individual capacities; and against various categories of University employees named as "John Doe" defendants.

Defendants promptly filed motions to dismiss or for summary judgment. In support of their motion for summary judgment, the University and the individual defendants other than Cory submitted supporting affidavits, declarations, and documents. An affidavit by Kathryn Fairchild, the University's Grievance Officer and Assistant Director of the Office of Affirmative Action, presented the following background facts that were later recited by the district court in its order under review.

In April 2004, the father of a female student complained to the Office of Student Affairs that his daughter and at least four other female students were accusing Professor Mark Cory of sexual harassment. Fairchild responded. She asked the father to identify the students because the risk of further misconduct made prompt action important. The father declined, telling Fairchild that his daughter would contact her after the spring semester concluded in mid-May.

On May 12, Fairchild met with the student and urged her to persuade the others to come forward. Later that day, Sarah Cox contacted Fairchild. Cox accused Cory of inviting her to his home in the fall of 2003 to work on a paper and then undressing her and getting into bed with her. Cox told Cory she did not want to have sex and left. Cox claimed that contacts with Cory after this encounter, including his proposal that they go away for a weekend together, made her uncomfortable. Fairchild asked Cox why she had not previously reported Cory's behavior. Cox replied "that men reacted to her in this way all the time." Fairchild advised University administrators of Cox's allegations. One week later, Cory was forced to resign.

Fairchild further averred that her duties included investigating all complaints of sexual harassment. Prior to the first student's complaint on May 12, she "had never received any student complaints of sexual harassment against Dr. Cory." Likewise, University President Sugg and Chancellor White declared that neither Cox nor any other student had ever reported sexual harassment by Cory until just before he was asked to resign.

The documents submitted in support of the motion for summary judgment included the University's lengthy written policy prohibiting sexual harassment of students, faculty, staff, and visitors. The policy defined sexual harassment as including unwelcome sexual advances or requests for sexual favors when submission to the request "is made either implicitly or explicitly a term or condition of . . . academic status or advancement," or when the conduct unreasonably interferes with an individual's academic performance. The policy further explained:

> Any student . . . who has experienced or witnessed sexual harassment is strongly urged to report it. The university must know about incidents of sexual harassment in order to stop them, protect victims, and prevent future incidents.

The policy advised students to report allegations of sexual harassment to the University's complaint officer and instructed the complaint officer to investigate "every allegation." Fairchild averred that the policy was published in the University's undergraduate student, graduate student, and faculty handbooks for the 2003-2004 school year, and on its web page.

Cox responded to the summary judgment motion with affidavits by herself and by another female student who alleged sexual harassment by Professor Cory. Cox averred that she is currently a law student at the University; that Cory's sexual advances in the fall of 2003 were non-consensual; that she has never seen the sexual harassment policy and did not recall receiving a student handbook; that she did not know she could report sexual harassment; that she was worried her allegations would not be believed; and that the University did not tell students "with regularity" how to report sexual harassment. Therefore, "as far as the students are concerned, the University simply gave sexual harassment lip service."

## II.

This is an appeal from the denial of qualified immunity, a limited exception to the final judgment rule designed to spare government officials who are entitled to qualified immunity the burden and expense of litigation. See Behrens v. Pelletier, 516 U.S. 299, 305-08 (1996). However, to be appealable, an otherwise interlocutory order must address the collateral issue of qualified immunity. If the district court instead enters an interlocutory order that ignores a timely claim of qualified immunity, our proper course is to remand with instructions to consider the qualified immunity issue. See Schatz Family ex rel. Schatz v. Gierer, 346 F.3d 1157, 1160 (8th Cir. 2003). Here, after reciting background facts contained in the parties' summary judgment papers, the court's order denied defendants' motion to dismiss on the ground of qualified immunity, noting that the issue "might be better addressed in a summary judgment motion" after discovery. It was error not to treat defendants' alternative motion as one for summary judgment, see Fed. R. Civ. P. 12(c), particularly when Cox submitted a factual response and did not assert a need for more discovery before the summary judgment motion could be decided, as Rule 56(f) expressly allows. Because the district court addressed the merits of the qualified immunity issue, we have jurisdiction to review its resolution of that issue. See Jones v. Coonce, 7 F.3d 1359, 1365 (8th Cir. 1993).

## III.

Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The first step in the qualified immunity analysis is to determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998).

Cox alleges that she is entitled to damages and injunctive relief under § 1983 because President Sugg, Chancellor White, and the John Doe defendants "tolerated, allowed, permitted, condoned, and/or approved of inadequate policies, procedures, customs, and/or usages that resulted in" Professor Cory engaging in sexual harassment that violated her constitutional rights under the Fourteenth Amendment. To avoid summary judgment in favor of a particular defendant on this § 1983 claim, Cox must make an adequate showing of "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001).

President Sugg, Chancellor White, and the John Doe defendants had no direct contact with Cox at the time in question. Thus, any violation of her constitutional rights must have been committed by Professor Cory, yet Cox's brief on appeal fails to identify the Fourteenth Amendment right allegedly violated. Nor did the district court focus on this critical threshold question. Though troubling, the omission is not fatal. A number of our prior decisions have stated, albeit with little or no analysis, that "[s]exual harassment by state actors violate[s] the Fourteenth Amendment and establishes a section 1983 action." Wright v. Rolette County, 417 F.3d 879, 884 (8th Cir. 2005), cert. denied sub nom. Sims v. Wright, 126 S.Ct. 1338 (2006). Typically, these decisions identify the Equal Protection Clause as the relevant constitutional provision. Thus, we assume without deciding that Cox presented sufficient evidence that Professor Cory as a state actor committed a constitutional violation in sexually harassing Cox.[1]

---

[1]It seems to us that many types of conduct that would be actionable sexual harassment under Title VII or Title IX would not be *constitutional* torts under conventional equal protection or substantive due process analysis. We leave that issue for another day.

Cox's § 1983 claim against Professor Cory is not before us. Rather, the issue is whether she presented sufficient evidence of culpability and causation by high ranking University officials to avoid summary judgment in their favor. In general, supervisors in this position are liable under § 1983 for a subordinate's violation of a third person's constitutional right only if their deliberate indifference to the offensive conduct and failure to take adequate remedial action proximately caused the injury. See Ottman v. City of Independence, Mo., 341 F.3d 751, 761 (8th Cir. 2003); Larson by Larson v. Miller, 76 F.3d 1446, 1453 (8th Cir. 1996) (en banc). Deliberate indifference is a "stringent standard of fault." Shrum, 249 F.3d at 780, citing Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997). It requires proof of *reckless disregard* of a risk of constitutional harm. Pietrafeso v. Lawrence County, 452 F.3d 978, 982-83 (8th Cir. 2006).

In this case, the issue is complicated by the nature of the § 1983 claims asserted. An educational institution may be liable under Title IX for a teacher's sexual harassment of a student. See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 281 (1998). However, because Title IX only prohibits discrimination by federal grant recipients, a supervisory school official may not be sued in his individual capacity, either directly under Title IX or under § 1983 based upon a violation of Title IX. Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 610-11 (8th Cir. 1999).[2] But what about § 1983 claims of *unconstitutional* sexual harassment by a teacher at an institution that receives Title IX funding? To our knowledge, no court has pondered the remedial dilemma inherent in this situation. If the constitutional prohibition is as broad as the Title IX prohibition, as our cases generally suggest, then allowing a

_____

[2]Not all circuit courts agree. See Delgado v. Stegall, 367 F.3d 668, 674 (7th Cir. 2004) (collecting cases). In the district court, Cox admitted that she has no cause of action against the individual defendants under Title IX. Then at oral argument, she suggested for the first time that defendants' alleged violation of her rights under Title IX can establish liability under § 1983. This § 1983 theory was not timely raised. In any event, it is barred by our decision in Kinman.

§ 1983 constitutional action against the institution's Title IX policymakers would trump the Supreme Court's careful crafting of the implied statutory damage action under Title IX. We doubt the Supreme Court would interpret § 1983 so broadly. The dilemma is resolved, at least in this case, if we measure the individual defendant's liability under § 1983 for alleged constitutional violations by the standards of the institution's Title IX liability established in Gebser. Accord Hayut v. State Univ. of N.Y., 352 F.3d 733, 753-54 (2d Cir. 2003).

In Gebser, the Supreme Court held that a private plaintiff is not entitled to damages under Title IX for a teacher's sexual harassment unless an official of the grant recipient with authority to address harassment complaints had actual notice of the teacher's alleged misconduct, and the official's inadequate response amounted to deliberate indifference to the discrimination. The institution's "asserted failure to promulgate and publicize an effective policy and grievance procedure for sexual harassment claims" is not enough to satisfy this rigorous standard. 524 U.S. at 290-92; see Grandson v. Univ. of Minn., 272 F.3d 568, 575-76 (8th Cir. 2001), cert. denied, 535 U.S. 1054 (2002).

Here, it is plain that Cox failed to present sufficient proof that President Sugg, Chancellor White, or any of the John Doe defendants had actual notice of Professor Cory's alleged sexual harassment, responded inadequately to Cory's misconduct when they learned of it, or exhibited deliberate indifference to the problem of sexual harassment at this major public university. Cox admits she did not report Cory's misconduct before her May 12, 2004, meeting with Grievance Officer Fairchild. Cox submitted no evidence refuting the sworn declarations of Fairchild, Sugg, and White that they had no knowledge of sexual harassment by Cory before that day. It is undisputed that University officials forced Cory to resign within one week of first learning of his alleged misconduct. Though Cox complains that the University should have disciplined Cory more publicly, this is not sufficient evidence of an inadequate response, much less of deliberate indifference.

-8-

Finally, defendants submitted uncontroverted evidence of a strong, published policy against sexual harassment of students and others in the University community. Cox does not argue that the policy was substantively inadequate. Rather, she complains that the policy was inadequately publicized to students and argues that it was an obvious failure because five female students did not come forward to report sexual harassment by Professor Cory. But allegations of an insufficiently publicized policy do not support a damage claim under Gebser, nor do they establish the proof of deliberate indifference required by our other cases. See S.J. v. Kansas City Mo. Pub. Sch. Dist., 294 F.3d 1025, 1029 (8th Cir. 2002); Shrum, 249 F.3d at 780; Thelma D. v. Bd. of Educ. of City of St. Louis, 934 F.2d 929, 935 (8th Cir. 1991).

For these reasons, we conclude that President Sugg, Chancellor White, and the John Doe defendants are entitled to qualified immunity from Cox's § 1983 damage claims because she submitted insufficient evidence that any of these defendants acted on behalf of the University with the requisite culpability to cause the violation by Professor Cory of Cox's right as a student to be free from sexual harassment. Of course, qualified immunity does not insulate these defendants from Cox's § 1983 claims for equitable relief. See Grantham v. Trickey, 21 F.3d 289, 295 (8th Cir. 1994). However, these defendants are entitled to qualified immunity because Cox's § 1983 claims fail on the merits -- for lack of a showing that they violated her constitutional (or Title IX) rights. This conclusion necessarily resolves the merits of her claims for equitable relief as well. Accordingly, we have jurisdiction to order dismissal of the claims for equitable relief. See Kincade v. City of Blue Springs, Mo., 64 F.3d 389, 395 (8th Cir. 1995), cert. denied, 517 U.S. 1166 (1996).

## IV.

The University and the individual defendants other than Cory moved to dismiss or for summary judgment three months after Cox filed her complaint. The district court dismissed many federal claims against these defendants. We now conclude that

summary judgment must be granted on the remaining federal claims as well. To this extent, the district court's May 3, 2006, order is reversed in part. The federal and state law claims now pending against former Professor Cory in the district court are analytically distinct, and the court has expended little time and effort on the state law claims against the defendants other than Cory. Therefore, we remand the case with directions to sever the claims against Mark Cory, to dismiss all federal claims against the remaining defendants with prejudice, and to dismiss all state law claims against the remaining defendants without prejudice. See 28 U.S.C. § 1367(c)(3); cf. Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1039 (8th Cir. 1999).

_____