# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2535

_____

John Doe, Individually and as Parents   *
and Next Friends of Jane Doe, a minor;   *
Martha Roe, Individually and as Parents   *
and Next Friends of Jane Doe, a minor,   *
  *
      Plaintiffs/Appellees,   *
  *   Appeal from the United States
      v.   *   District Court for the
  *   Western District of Arkansas.
Lavon Flaherty, Individually, and in his   *
Official Capacity as Superintendent in   *
the Delight Public Schools; Kathaleen   *
Cole, Individually, and in her Official   *
Capacity as Principal in the Delight   *
High School; Curtis Turner, Jr.,   *
Individually,   *
  *
      Defendants,   *
  *
Tanya Wilcher, Individually,   *
  *
      Defendant/Appellant,   *
  *
Jim Kirkham, In their Official Capacity   *
as the Delight Public School Board;   *
Gary Wofford, In their Official   *
Capacity as the Delight Public School   *
Board; Citronella Dixon, In their   *
Official Capacity as the Delight Public   *
School Board; Ricky Buck, In their   *
Official Capacity as the Delight Public   *
School Board; Renieta Leeper, In their   *

Official Capacity as the Delight Public    *
School Board; Robbie Lee, In their    *
Official Capacity as the Delight Public    *
School Board; Jeff Hill, In their Official *
Capacity as the Delight Public School    *
Board,    *
   *
           Defendants,    *
   *
Delight Public School District,    *
   *
           Defendant/Appellant.    *

_____

Submitted: March 11, 2010
Filed: October 19, 2010
_____

Before BYE, ARNOLD, and COLLOTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

John Doe and Martha Roe filed this action pursuant to 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), on behalf of their minor daughter, Jane Doe. For several months during the 2006-2007 school year, Jane Doe was involved in a sexual relationship with Chad Smith, her basketball coach at Delight High School. The plaintiffs claim that Tanya Wilcher, the former Principal of Delight High School, had actual knowledge of the relationship, but failed to investigate and take remedial action. They allege that Wilcher thereby demonstrated deliberate indifference to the sexual abuse of a student, in violation of Doe's constitutional rights. Based on these same allegations, the plaintiffs contend that the Delight School District violated Title IX.

The district court denied Wilcher's motion for summary judgment on the § 1983 claim and the school district's motion for summary judgment on the Title IX claim. The court determined that a genuine issue of material fact existed as to what notice Wilcher received, and denied her qualified immunity on the basis. The defendants appeal. We reverse and remand with directions to enter judgment for the defendants.

## I.

We recite the facts in the light most favorable to the plaintiffs. In the spring of 2006, the Delight School District hired Chad Smith as the girls' basketball coach at Delight High School. Smith had one year of prior experience at another school district, and received positive recommendations for his work there. By August 2006, parents began complaining to school officials about text messages that Smith sent to female students. On August 8, 2006, a parent of one of Smith's players informed Curtis Turner, the district Superintendent, that Smith had sent her daughter a text message that read, "are you drunk yet?" Turner questioned Smith about the message, and Smith explained that the message was a continuation of teasing started by students at basketball practice concerning a public intoxication ticket the player had allegedly received. Smith agreed with Turner that the text message was inappropriate, and stated that he would not send similar messages in the future.

In October 2006, the mother of another female basketball player voiced concerns, this time to Wilcher, about Smith's text messages. The mother told Wilcher that Smith had sent text messages to her daughter throughout the summer, informing her of practice times. The parent explained to Smith that she felt uncomfortable with his sending text messages to her daughter, and asked him to stop. He reluctantly agreed. Later, while making room assignments for an out-of-town game, Smith jokingly told the player that her mother could stay with him. The student reported that statement to her mother, who relayed the comment to Wilcher. Wilcher confronted

-3-

Smith about the statement, and he claimed that a male student, L.S., had made the remark. Wilcher orally reprimanded Smith, and instructed him to make no further comments regarding parents and to prohibit students from doing so.

At about that same time, in October 2006, an incident arose relating to C.H., John Doe's cousin. C.H. worked as Superintendent Turner's secretary, and she informed Turner that Jane Doe, a ninth grader at the time, might have a crush on Smith. C.H. also stated that she suspected Jane Doe was leaving her home economics class to visit Smith in the school gymnasium. Turner informed Principal Wilcher of C.H.'s statements and requested that Wilcher look into the matter. Wilcher followed up with Jane Doe's home economics teacher, Mrs. Hunter, to determine if Doe had been skipping class. Hunter stated that she had not noticed Jane Doe leaving class, and that Doe had been absent only once or twice. Wilcher then reminded all teachers at a faculty meeting and in the school's printed daily bulletin that students were not to leave class without a valid pass. Turner also instructed the school's resource officer to monitor the school gym to determine if Jane Doe was spending time there, but received no reports of any visits.

While Turner and Wilcher investigated C.H.'s suspicions at the school, C.H. visited Martha Roe at her house to express concern that "something was going on" between Smith and Jane Doe. C.H. repeated to Roe her belief that Jane was skipping class to go to the gym, and stated that she had seen Jane sitting on Coach Smith's office desk in her cheerleading skirt. Following this conversation with C.H., Roe phoned Smith and asked him directly if "something was going on" between him and her daughter. Smith denied that anything was "going on" with him and Jane Doe. Roe also called Principal Wilcher about the information she learned from C.H. According to Roe, Wilcher assured her that she had investigated the situation and found that Jane was not leaving class, and that there was no cause for concern.

Because of C.H.'s apparent insistence that "something was going on" between Jane Doe and Smith, John Doe and Martha Roe went to a school board meeting on the evening of October 23, 2006, to discuss the situation with Wilcher in person. C.H. interrupted Wilcher during the meeting and explained that Wilcher needed to speak with Jane Doe's parents, who were waiting in the school parking lot. When Wilcher arrived at the parking lot, C.H. was crying, and Wilcher understood Doe's parents to be upset with C.H. for sharing information about their daughter. Roe asked Wilcher if there was anything to C.H.'s claims. Wilcher assured her that she had looked into C.H.'s suspicions and confirmed that they were only rumors. C.H. then volunteered that she had additional information to provide to Wilcher about what "was going on," including the names of teachers and staff at Delight High School who had seen incidents that C.H. characterized as "inappropriate." Jane Doe's parents understood that Wilcher would investigate this additional information, but claim that she never did. Wilcher took maternity leave from late November until early January.

While Wilcher was on leave, in December 2006, Smith again became the focus of an inquiry regarding a text message. A teacher had confiscated a female student's cellular phone during class and noticed a message that read, "OMG you look good today." The message's sender as indicated on the phone was Chad Smith. The teacher took the phone to Superintendent Turner, and Turner confronted Smith about the message. Smith claimed that L.S., the same male student to whom Smith had attributed the remark about another student's mother, had taken his phone and sent the message. L.S. later admitted to Turner that he indeed had taken Smith's phone from his desk and sent the message. Following this admission by L.S., Turner instructed Smith to keep his phone in a place that was not accessible to students, and Smith agreed to do so.

In January 2007, shortly after Wilcher returned from maternity leave, Smith was implicated in a final text messaging controversy. This time, a male student received a message containing vulgar language from M.B., an eighteen year-old

female student. The message appeared to be addressed to Coach Smith. The male student showed the message to Wilcher and speculated that M.B. had sent the message to him rather than Smith by mistake. Wilcher questioned Smith about the message, and he insisted that he knew nothing about it. He claimed that students were trying to cause trouble for him with school administrators, and he demonstrated how a message could be altered to appear as though it were addressed to him. Wilcher also questioned M.B. about the message, and M.B. denied ever sending the message or having contact with Smith. Wilcher examined M.B.'s phone and found no evidence of any communication with Smith. Wilcher claims to have monitored M.B. after the incident, and noticed nothing to indicate that M.B. had been untruthful.

Later that same month, Gary Wofford, a member of the school board, presented Superintendent Turner with letters from parents documenting their complaints against Smith. The letters repeated the claims that Turner and Wilcher had previously investigated, but also added new details and a few new allegations. One letter clarified that in addition to telling a student that her mother could stay with him on a team road trip, Smith also allegedly sent the student a text message stating "tell your mom that I love her." Another letter described an incident in which Smith tried to prohibit his players from shaking an opposing coach's hand following a basketball game. Other letters suggested that Smith threatened students to prevent them from talking to their parents about him, and that he provided students with answers to classroom examinations in advance.

In response to the letters, Wilcher conducted another investigation, and interviewed several students regarding their knowledge of the allegations. Wilcher found no evidence that Smith was providing examination answers, but the students confirmed the handshaking incident, and a few agreed that he had threatened them. Wilcher and Turner then met with Smith to question him about the complaints and to review their findings. Smith admitted that he had instructed his players not to shake another coach's hand, but denied the other allegations. Wilcher and Turner formally

reprimanded Smith. Following this meeting, Turner instructed Wilcher and the school's attorney to begin the process for declining to renew Smith's employment contract at the end of the school year.

On March 14, 2007, before Smith was notified of his non-renewal, Principal Wilcher learned that Smith and Jane Doe were involved in a sexual relationship. Wilcher was approached that morning by C.P., a kindergarten teacher, who relayed a rumor: C.P.'s granddaughter claimed that Smith had been called into Wilcher's office for sexual misconduct with a student. Wilcher knew this was false, but asked for additional information. C.P. indicated that her granddaughter had heard the rumor from another student, S.L. Wilcher contacted S.L., who informed her that Smith and Doe had an ongoing sexual relationship. S.L. stated that another student, W.W., also knew about the relationship. Wilcher then questioned W.W., and he revealed that Jane Doe performed oral sex on Smith. Wilcher subsequently contacted Superintendent Turner, Jane Doe's parents, and law enforcement authorities. Turner suspended Smith, and Jane Doe provided a statement to police admitting frequent sexual contact with Smith in the school locker room. Smith was then arrested and charged in Arkansas court with first degree sexual assault. He ultimately pled guilty to the charge and was sentenced to ten years' imprisonment, with six years suspended.

Jane Doe's parents brought an action under 42 U.S.C. § 1983 against Wilcher, Turner, and several other school officials in their official and individual capacities. They also brought claims under § 1983 and Title IX against the Delight School District. The plaintiffs alleged that Wilcher, Turner and others violated Jane Doe's rights under the Due Process Clause of the Fourteenth Amendments by failing to investigate allegations regarding Smith's sexual relationship with Doe. In particular, they alleged that Smith's inappropriate text messages to female students and Wilcher's conversation with John Doe, Martha Roe, and C.H. in the school parking lot on October 23, 2006, provided Wilcher with notice of Smith's sexual abuse.

Consequently, they claim Wilcher's failure to respond constituted deliberate indifference that caused injury to Jane Doe.

The individual defendants and the school district moved for summary judgment on all claims, and the district court granted the motions of most of the individual defendants. The court also dismissed the § 1983 claim against the school district, holding that the school board did not have notice of Smith's sexual relationship, and that there was no evidence of a pattern of unconstitutional misconduct by the school district. The court determined, however, that a genuine issue of material fact existed as to the whether Wilcher had "actual notice" of the sexual abuse based on her October 23, 2006, conversation with C.H. and Doe's parents, but not from Smith's text messages to students. Accordingly, the court found that Wilcher was not entitled to qualified immunity, and denied the motion to dismiss the § 1983 claim against her in her individual capacity. The district court also concluded that the factual dispute about Wilcher's notice precluded a grant of summary judgment on the Title IX claim against the school district.

## II.

We first address the district court's denial of qualified immunity. Qualified immunity shields a public official such as Wilcher from civil lawsuits when her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether Wilcher is entitled to qualified immunity, we must ask (1) whether the facts alleged, construed in the light most favorable to Jane Doe, establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful. *See Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009). If the answer to either question is no, then Wilcher is entitled to qualified immunity. We review a district court's decision regarding

qualified immunity on summary judgment *de novo*, considering the evidence in the light most favorable to Jane Doe. *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

We first address whether we have jurisdiction over this interlocutory appeal. Ordinarily, we lack jurisdiction to entertain an immediate appeal from a district court's order denying summary judgment, because such an order is not a final decision. *See* 28 U.S.C. § 1291; *Krout*, 583 F.3d at 563-64. We have limited authority, however, under the collateral order doctrine to review the denial of qualified immunity on summary judgment. *Johnson v. Jones*, 515 U.S. 304, 311-12 (1995). Our jurisdiction in such cases includes only "abstract issues of law," and not questions of fact. *Id.* at 317. Interpreting that divide, this court has determined that "[t]he question of what was known to a person who might be shielded by qualified immunity is reviewable," *Miller v. Schoenen*, 75 F.3d 1305, 1309 (8th Cir. 1996), because this inquiry is a legal one that requires us "to determine if the known facts would inform a reasonable actor that his actions violate an established legal standard." *Id.* We therefore have jurisdiction to review whether the information Wilcher learned, viewed in the light most favorable to Doe, met the legal standard for notice under § 1983.

Jane Doe and her parents assert that the district court properly denied Wilcher's motion for summary judgment, because Wilcher violated § 1983 through her deliberate indifference to the violation of Doe's constitutional rights. There is no question, under our precedent, that Doe's substantive due process rights were indeed violated when Coach Smith sexually abused her. *See Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 778 (8th Cir. 2001); *Doe v. Gooden*, 214 F.3d 952, 956 (8th Cir. 2000). Whether Wilcher is liable under § 1983 for Smith's abusive conduct, however, is another matter. Supervisory school officials, like Wilcher, can be liable under § 1983 only if they are "deliberately indifferent to acts committed by a teacher that violate a student's constitutional rights." *Gooden*, 214 F.3d at 955. Therefore, the plaintiffs must prove that Wilcher had notice of a pattern of unconstitutional acts by Smith, that

she showed deliberate indifference to those acts, that she failed to take sufficient remedial action, and that such failure proximately caused injury to Jane Doe. *Jane Doe A v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990). Deliberate indifference is a "stringent standard of fault," *Shrum*, 249 F.3d at 780, that cannot be predicated upon mere negligence. *Jane Doe A*, 901 F.2d at 646.

In *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998), the Supreme Court held that, for a school official with authority to address sexual misconduct complaints against a teacher to be liable under Title IX, that official must have "actual knowledge of discrimination" and fail "adequately to respond." *Id.* at 290-91. In the context of a § 1983 claim of unconstitutional sexual abuse by a teacher at an institution that receives Title IX funding, our court has determined that the individual liability of a supervisory school official under § 1983 should be measured "by the standards of the institution's Title IX liability established in *Gebser*." *Cox v. Sugg*, 484 F.3d 1062, 1067 (8th Cir. 2007). Where both the Title IX and the § 1983 action allege discrimination by the same policymaking official and are premised on the same facts, *Cox* adopted comparable notice standards to prevent the § 1983 action from trumping "the Supreme Court's careful crafting of the implied statutory damage action under Title IX." *Id.* This resolution avoids the remedial dilemma that could arise if the notice standard for the § 1983 claim were less stringent than for the Title IX claim. *Id.* Accordingly, our court has held that an official in these circumstances must have "actual notice" of the alleged "sexual harassment" or "sexual abuse." *Cox*, 484 F.3d at 1067; *Gooden*, 214 F.3d at 956.

It was clearly established at the time of the incident in this case that a supervisory school official with actual notice of ongoing sexual abuse against a student was required to take action to investigate and stop the abuse. The plaintiffs do not appear to argue that the notice standard under § 1983 is less stringent than actual knowledge, but to the extent that the issue is raised, no less stringent notice standard was clearly established for purposes of qualified immunity in this circuit as

of October 2006. With respect to the actual notice standard, however, Jane Doe and her parents claim that the facts alleged, construed in the light most favorable to their claim, demonstrate that Wilcher had actual knowledge of Smith's sexual abuse of Jane Doe.

We agree with the district court that Smith's text messages to female students did not provide Wilcher with actual notice of sexual abuse. The inappropriate comments in those messages, without more, did not alert Wilcher that Smith was involved in a sexual relationship with a student. *See Gebser*, 524 U.S. at 291. Smith's first message to provoke a parental complaint, asking a female student – "Are you drunk yet?" – did not rise to the level of showing sexual abuse or harassment of Doe or any other student, especially in light of the context that the recipient allegedly had been charged with public intoxication. The same is true for Smith's "tell your mom I love her" message. This message did not reasonably signal to Wilcher anything regarding Smith's sexual contact with Doe or another student. Even the most suggestive text message, which was sent from Smith's phone to a female student stating, "OMG you look good today," did not go so far as to suggest actual sexual conduct or sexual abuse.

We also conclude that Wilcher's conversation with Jane Doe's parents and C.H. in the high school parking lot on October 23, 2006, did not provide Wilcher with actual notice of Smith's sexually abusive behavior. Roe averred only that she asked Wilcher in the parking lot about C.H.'s suspicions that "something was going on" with Jane Doe and Smith. This vague inquiry about whether "something was going on" was insufficient to provide Principal Wilcher with actual knowledge of sexual abuse by Smith. Wilcher had been advised previously through C.H.'s statements to Turner that Doe "might have a crush" on Smith and might be spending time with him in the gym. But Wilcher and Turner investigated those suspicions, following up with Doe's teacher and the school resource officer monitoring the gym, and found no evidence to suggest a substantial risk of sexual misconduct. A student's familiar

behavior with a teacher or even an "excessive amount of time" spent with a teacher, without more, does not "automatically give rise to a reasonable inference of sexual abuse." *P.H. v. Sch. Dist. of Kansas City*, 265 F.3d 653, 659 (8th Cir. 2001).

Neither C.H. nor anyone else alleged during the relevant time period any physical contact between Smith and Doe or any other student. The plaintiffs presented no evidence demonstrating that Smith reciprocated Doe's allegedly flirtatious behavior with physical contact. Wilcher's reasonable investigation of the information that came to her attention uncovered no evidence to substantiate the suspicions. Given the stringent standard for supervisory liability in this context, we conclude that no reasonable jury could find actual notice on those alleged facts.

The plaintiffs contend that a final claim made by C.H. and reported in Roe's affidavit was enough to provide Wilcher with actual notice of Smith's sexual misconduct. According to Roe, C.H. allegedly suggested during the October 23 conversation that she wanted to provide Wilcher with "the names of other teachers and staff who had witnessed incidents" that were "inappropriate." This assertion regarding potential accounts of unspecified "inappropriate behavior" from unidentified individuals did not notify Wilcher of sexual misconduct. C.H. never stated that the behavior allegedly witnessed "voiced any suspicions of sexual abuse." *P.H.*, 265 F.3d at 663. There is no evidence that C.H., who had frequent contact with Turner and Wilcher in her job at the high school, shared with Wilcher any additional information related to that conversation. C.H.'s nonspecific statements of October 23, 2006, without more concrete information, do not constitute the type of notice required to impose § 1983 supervisory liability in this context. *See id.* at 659; *Gooden*, 214 F.3d at 956. Accordingly, we reverse the district court's denial of qualified immunity to Wilcher.[1]

---

[1]The plaintiffs also assert, without discussion, that Wilcher ignored information about Smith's sexual abuse of minors in another school district before he obtained employment at Delight High School. To support this claim, the plaintiffs cite a

III.

We next consider the plaintiffs' Title IX claim against the Delight School District. In addition to our limited jurisdiction to review the denial of qualified immunity, we have jurisdiction to review "issues of law that are closely related to the qualified immunity determination." *Henderson v. Baird*, 29 F.3d 464, 467 (8th Cir. 1994). We may exercise "pendent appellate jurisdiction . . . where the otherwise nonappealable decision is inextricably intertwined with the appealable decision." *Kincade v. City of Blue Springs*, 64 F.3d 389, 394 (8th Cir. 1995) (internal quotation omitted). We have held that two issues are inextricably intertwined "when the appellate resolution of the collateral appeal necessarily resolves the pendent claim as well." *McCoy v. City of Monticello*, 342 F.3d 842, 849 (8th Cir. 2003). In this case, the resolution of the qualified immunity claim necessarily resolves the Title IX claim, and we thus have jurisdiction to review the district court's denial of the motion to dismiss on that claim.

According to the Supreme Court in *Gebser*, liability cannot lie against a federal grant recipient under Title IX unless "an appropriate person" with authority to rectify the Title IX violation had actual notice of the alleged misconduct. *See Gebser*, 524 U.S. at 290. Neither party disputes that Principal Wilcher was an "appropriate person" in this case. *See Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 457(8th Cir. 2009). But having already determined that the facts alleged by the plaintiffs do not meet the *Gebser* actual notice standard, we conclude that the Delight School District is not liable under Title IX based on Wilcher's alleged deliberate indifference to Smith's sexually abusive conduct.

---

statement made by one of Smith's former students to the Arkansas state police that she and Smith engaged in sexual conduct following her graduation from high school. The statement, which was not mentioned by the district court, is dated March 29, 2007, more than two weeks *after* Smith was suspended for his misconduct with Doe. At that point, the issue of actual notice was moot.

\*      \*      \*

For the foregoing reasons, the decision of the district court is reversed, and the case is remanded with directions to dismiss the action.

_____