# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-3010

_____

K.C., a minor

*Plaintiff - Appellant*

v.

Mark Mayo; Doug Summers; Jeffrey Curley; Marshfield R-1 School District

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: September 24, 2020
Filed: December 21, 2020

_____

Before LOKEN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

K.C. appeals from the district court's[1] adverse grant of summary judgment in favor of Marshfield R-1 School District ("the District") and three individual school

_____

[1]The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri.

officials in this case involving allegations of sexual abuse and harassment by a teacher and coach, Johnna Feazell. We affirm.

## I. BACKGROUND

Between 2012 and 2013 , K.C. was an eighth-grade student (and subsequently a rising ninth-grade student) at the District's Junior High School. Feazell was K.C.'s English teacher and her track and softball coach. In the spring and early summer of 2013, K.C.'s mother permitted K.C. to spend time with Feazell outside of school and school-sponsored activities. As examples, K.C. and Feazell went biking together, K.C. once stayed at Feazell's house while her mother went shopping in Springfield, and K.C. went on a trip with Feazell to watch a softball game at the University of Missouri.

In June 2013, K.C.'s mother found two undated letters in which Feazell professed her heartfelt love for K.C. K.C.'s mother brought the letters to the Junior High Principal, Jeffrey Curley.[2] K.C.'s mother testified during her deposition that she believed the letters were "highly inappropriate," but she did not have any reason to believe a sexual contact had occurred. Curley agreed the letters were inappropriate, but interpreted them (and the mother's concern) as Feazell "over-stepping her bounds . . . trying to be the mom." The letters do not indicate a sexual relationship between K.C. and Feazell, and there is no evidence that in June 2013 anyone believed a romantic or physical relationship existed involving K.C. and Feazell.

---

[2]K.C. asserts that a third letter is now missing, and she claims that a material dispute persists over the timing of her mother's meetings with Curley. We agree with, and adopt here, the facts as recited by the district court, after combing the record and relying solely on those facts supported by the evidence, viewed in the light most favorable to K.C. See FED. R. CIV. P. 56(c).

Approximately two weeks later, K.C.'s mother returned to the school and showed Curley text messages between K.C. and Feazell found on K.C.'s phone. While the text messages no longer exist, neither K.C.'s mother nor Curley have made any claim that the messages suggested a sexual relationship. Instead, K.C.'s mother saw the texts as demonstrating Feazell's increased anxiety (which she described as "panicked" and "desperate") about K.C. not returning her calls or messages. Around this time Curley consulted with Superintendent Mark Mayo about Feazell's conduct.

On June 17, 2013, Curley and a teacher's union representative met with Feazell. Curley gave directions to Feazell to stop texting or writing K.C., to communicate with K.C. only about school-related issues, and to involve another adult if personal issues arose. Curley also directed Feazell to report any non-school related communications or attempted communications from K.C. to either Curley or Assistant Principal Doug Summers. Curley later moved into the role of Principal at the High School, while Summers became Principal at the Junior High. As the new school year approached in August, Summers met with Feazell to remind her of the no-out-of-school-contact ("no-contact") prohibition with K.C.

In early September 2013, K.C. was invited to spend the night at the home of a friend whose mother happened to be an elementary school teacher in the District. Feazell contacted the teacher and asked for permission to pick up K.C. from the sleepover. Feazell explained this rather odd request by informing the other teacher that K.C.'s "home life was horrible," and she was "fixing a bedroom" in her house for K.C. The teacher did not allow the contact, and reported the incident to her elementary school counselor and principal. On their advice, the teacher showed Principal Summers the text messages she had received from Feazell. Summers in turn showed the text messages to then-Superintendent Mayo, and at some point Principal Curley became aware of the incident. Principal Summers confronted Feazell and asked her about the text messages. Feazell initially denied sending the messages but eventually admitted to sending them claiming she was only checking on K.C. On

October 9, 2013, then-Superintendent Mayo wrote a Notice of Deficiency letter to Feazell, citing her continued communications with K.C., despite the earlier no-contact prohibition. The letter served as a "statutory warning" that formal charges and/or employment termination would follow if her behavior did not improve.

Approximately one year later, K.C.'s mother discovered a phone that Feazell had purchased for K.C. to facilitate clandestine communications between the two. K.C.'s mother discovered text messages on the phone that evidenced sexual activity between Feazell and K.C. On October 13, 2014, K.C.'s mother brought the phone to Principal Curley. Upon seeing the messages, Principal Curly immediately contacted the police and placed Feazell on administrative leave. Feazell subsequently resigned and eventually pled guilty to four felony counts, including statutory sodomy and sexual contact with a student.

K.C. commenced this action against the District, Curley, Summers and Mayo, alleging negligence and constitutional violations by the individual officials under 42 U.S.C. § 1983, and claims against the District under § 1983 and Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681. The district court granted the defendants' motion for summary judgment. K.C. appeals the district court's decision with respect to the Title IX claim against the District and the § 1983 claims against the individual defendants.

## II. DISCUSSION

We review *de novo* a district court order granting summary judgment, viewing the evidence in the light most favorable to the non-moving party, and drawing all reasonable inferences in their favor. Perkins v. Hastings, 915 F.3d 512, 520 (8th Cir. 2019). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681. We have long recognized that a school district can be held liable under Title IX for the sexual harassment of a student by a teacher. Franklin v. Gwinnett Cnty. Pub. Schs., 503 U.S. 60, 74–75 (1992). And, supervisory school officials can be held individually liable under § 1983 for sexual abuse by a teacher, but "only if they are deliberately indifferent to acts committed by a teacher that violate a student's constitutional rights." Doe v. Flaherty, 623 F.3d 577, 584 (8th Cir. 2010) (quoting Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000)).

Where, as here, the complaint involves allegations against school officials brought under both Title IX and § 1983, "our court has held that an official in these circumstances must have 'actual notice' of the alleged 'sexual harassment' or 'sexual abuse'" to meet the standard for liability. Id. See also Cox v. Sugg, 484 F.3d 1062, 1067 (8th Cir. 2007). The same standard applies to Title IX claims against a school district. Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998) ("[A] damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.").

Accordingly, to survive a motion for summary judgment here, there must be a genuine issue as to whether the District or any of the individual defendants had actual notice of sexual abuse or harassment and failed to adequately respond. When the facts present here are viewed in a light most favorable to K.C., the claims cannot survive summary judgment because the facts are insufficient to support a finding of actual notice. See Flaherty, 623 F.3d at 585–86 (no Title IX claim where the facts do not meet the Gebser actual notice standard); Plamp v. Mitchell Sch. Dist. No. 17-2, 565 F.3d 450, 457 (8th Cir. 2009) (vague complaints to school principal insufficient

to support finding of actual notice); <u>P.H. v. Sch. Dist. of Kansas City, Missouri</u>, 265 F.3d 653, 662-63 (8th Cir. 2001) (evidence of "excessive time" together or favoritism does not meet the actual notice standard).

A searching review of the summary judgment record reveals no evidence to indicate school officials had actual notice of sexual harassment or abuse by Feazell prior to the events of October 13, 2014. When K.C.'s mother first alerted Principal Curley of her concerns in June 2013, she provided two letters written by Feazell and text messages from Feazell to K.C. that were at most inappropriate but did not appear to indicate that a physical or sexual relationship existed. And K.C.'s mother admitted as much during her deposition. Afterwards, on June 17, Principal Curley met with Feazell and a union representative and placed Feazell under a no-contact prohibition. A few weeks later, Principal Summers met with Feazell to remind her of the no-contact order. In September 2013, Principals Summers and Curley received a complaint that Feazell tried to pick up K.C. from a sleepover.[3] As a result, on October 9, 2013, the District issued a Notice of Deficiency letter placing Feazell on statutory notice that further action would be taken if she violated the no-contact order.

Approximately one year passed before K.C.'s mother met with Principal Curley on October 13, 2014, with the cell phone containing text messages evidencing a sexual relationship involving K.C. and Feazell. Curley took immediate action by contacting law enforcement, and placing Feazell on administrative leave. Actual notice cannot be assigned to the District – or to any school official – before October 13 and thus District and the individual defendants are entitled to summary judgment.

---

[3]K.C. asserts this incident was an attempted kidnaping, but there is nothing in the record to support that description. The attempted contact was inappropriate, especially in light of the no-contact order, but the record does not support the conclusion that this conduct rose to the level of actual notice by school officials of sexual abuse or misconduct.

K.C. argues that the district court improperly resolved factual disputes at the summary judgment stage. However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)) (emphasis in original). See also FED. R. CIV. P. 56(c). That K.C. alleged unsubstantiated facts to suggest the District somehow should have inferred sexual misconduct here is irrelevant. See P.H., 265 F.3d at 663 (evidence that the school district "should have known" of alleged sexual misconduct was insufficient). The district court was careful to distinguish between admissible facts and speculation, arriving at summary judgment only after careful consideration of the material facts supported by the record.

## III. CONCLUSION

The district court did not improperly weigh the evidence and the summary judgment record established that no genuine dispute exists as to whether the District or any school official had actual notice of sexual abuse or harassment prior to October 13, 2014. Summary judgment was appropriate on both the Title IX and § 1983 claims. We affirm.

_____