# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 19-2078

———————————————

Sally E. Podrebarac

*Plaintiff - Appellant*

v.

Minot State University

*Defendant - Appellee*

———————

Appeal from United States District Court
for the District of North Dakota - Bismarck

———————

Submitted: October 22, 2020
Filed: February 3, 2021
[Unpublished]

———————

Before COLLOTON, GRASZ, and STRAS, Circuit Judges.

———————

PER CURIAM.

Sally Podrebarac had a sexual relationship with a professor while she attended Minot State University. About a year after graduation, an attorney contacted Minot State on her behalf and reported, for the first time, that a professor had sexually

harassed her. When she later sued under Title IX, the district court[1] granted summary judgment to Minot State. We affirm.

## I.

Podrebarac attended Minot State as an undergraduate music student from 2008 to 2012. While she was there, she had a sexual relationship with one of her professors, Mark Boren. At one point, they were having sex multiple nights a week in his office. Their relationship lasted until late 2012—after she had already graduated from Minot State and moved out of state to continue her education. After graduation, Podrebarac confided in her pastor about the relationship. Through that conversation, and by working with a therapist, she came to view the sex as nonconsensual, testifying at one point that she had been "raped hundreds of times."

Several months later, Podrebarac had her attorney send a letter and complaint to Minot State, in which she alleged that Boren had sexually harassed her. Following a second letter, the school launched an investigation that resulted in Boren's suspension and resignation.

Podrebarac filed a federal lawsuit several years later. She claimed that Minot State had created a "[h]ostile [e]ducational [e]nvironment" and responded to her allegations in a "clearly unreasonable" manner. Her case did not get past summary judgment.

## II.

We review the district court's decision to grant summary judgment de novo. *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc). "Summary judgment [was] appropriate [if] the evidence, viewed in [the] light most favorable to

---

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas, sitting by designation.

[Podrebarac], shows no genuine issue of material fact exists and [Minot State was] entitled to judgment as a matter of law." *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (quotation marks omitted).

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). If one of its teachers sexually harasses a student, a public university like Minot State is liable for damages,[2] *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 456 (8th Cir. 2009), but only if it is "(1) deliberately indifferent (2) to known acts of discrimination (3) [that] occur under its control," *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001); *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91 (1998).

The second element, "actual knowledge," is missing here. *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058–59 (8th Cir. 2017). It is undisputed that Podrebarac did not tell anyone in a position of authority at Minot State about her relationship with Boren until her attorney notified the school in 2013, nearly a year after she graduated. *See Gebser*, 524 U.S. at 290 (explaining that actual knowledge by an "appropriate person"—someone who "has authority to address the alleged discrimination and to institute corrective measures"—is required). "[A]fter-the-fact notice," as we have already made clear, is not enough. *K.T.*, 865 F.3d at 1058–59 (explaining that "a plaintiff must allege that the [school] had *prior notice* of a substantial risk of . . . harassment 'in the recipient's programs'" (quoting *Gebser*, 524 U.S. at 290)).

---

[2]Podrebarac sought both damages and injunctive relief. The latter is not available to her, however, because she no longer attends Minot State. *Grandson v. Univ. of Minn.*, 272 F.3d 568, 574 (8th Cir. 2001) (explaining that the fact the plaintiff "is no longer a student is an adequate basis to dismiss an individual Title IX claim for injunctive relief").

Nor is there any other evidence that Minot State knew of the alleged sexual harassment beforehand. Podrebarac says the chair of the music department must have known, because he was aware that: (1) there were rumors that Boren spent time late at night with students and that furniture blocked the line of sight into his office; (2) he had asked for permission for the two of them to attend a music convention together; and (3) he had made a comment about another student's weight a couple of years earlier. As for the first fact, the department chair thought that the furniture was positioned to provide privacy while Boren was working, but regardless, he moved it "right away" when the issue was brought to his attention. Besides, spending "excessive amount[s] of time" with students, does not, "without more," create a "reasonable inference of sexual" misconduct, much less actual knowledge that it was happening. *Doe v. Flaherty*, 623 F.3d 577, 585 (8th Cir. 2010) (quotation marks omitted); *see also P.H. v. Sch. Dist. of Kansas City, Missouri*, 265 F.3d 653, 662–63 (8th Cir. 2001) (concluding that there was no actual knowledge, even though a school received complaints that a teacher "was spending too much time" with a student).

Adding the other facts establishes, at most, that the department chair should have known of the harassment, not that he actually did. *See P.H.*, 265 F.3d at 663 (explaining that there is no Title IX liability when a school fails "to react to teacher-student harassment of which it *should have* known"). In fact, he specifically addressed the travel request in a note, stating that if there were adequate funding, he would have anticipated "the highest professional behavior" from Boren, even if the situation was "precarious" and "best avoided." *See id.* at 657, 662–63 (holding that actual knowledge did not exist even though the vice principal told a teacher that "spending a lot of time with the same kids . . . just doesn't look right so I wouldn't recommend it"). Similarly, the stray comment about *another* student's weight was too "vague" and unrelated to provide knowledge of sexual misconduct that arose more than two years later. *Plamp*, 565 F.3d at 457; *see also Flaherty*, 623 F.3d at 585 (holding that knowledge was absent even after a coach had texted messages like

-4-

"OMG you look good today," "tell your mom I love her," and "Are you drunk yet?" to female students).[3]

## III.

We accordingly affirm the judgment of the district court.

_____

_____

[3]Nor is it enough that the Department of Education's Office for Civil Rights later found that Minot State had failed to comply with certain Title IX regulations. *See Roe v. St. Louis Univ.*, 746 F.3d 874, 883 (8th Cir. 2014) (explaining that "the Supreme Court has cautioned that 'alleged failure to comply with the [Title IX] regulations' does not establish actual notice" (alteration in original) (quoting *Gebser*, 524 U.S. at 291–92)).